NETTIE D. HARRIS, ADMINISTRATRIX, ETC., *v.* E. A. HARRIS.

EXECUTION OF DEED — SIGNATURE — DELIVERY — FINDING AGAINST EVIDENCE.—In an action to cancel a deed purporting to have been signed by the plaintiff's intestate a few hours before his death, it appeared from the evidence that at the time of the alleged execution the deceased was paralyzed so that he could not use his arm, and that a bystander, by his direction, took and guided his hand and thus made the signature. The jury found that the deceased was "in the possession and use of his mental faculties at the time said deed.was signed so as to be capable of understanding and comprehending what was being done in the execution of said deed; that the deed was read to him before the same was signed; and that he acknowledged the deed;" but also found that the deed was not signed or delivered by the deceased, or by any one authorized to sign or deliver it. *Held:* The last finding was not sustained by the evidence.

ID.—ID.—One signing a contract commonly writes his name with his own hand; but if another writes it for him, in his presence and at his request, or especially if he holds the top of the pen while another writes it or makes his mark to his name, which the other has written, or if he acknowledges the signature, however made, to be his own, this is sufficient.

ID.—DELIVERY.—The elements of a delivery are, that the writing must be meant by the maker to take immediate effect; and be presumably, or in fact, accepted by the other party.

ID.—CONFLICT IN FINDINGS—MENTAL COMPETENCY.—The jury also found that the deceased, at the time of the alleged execution of the deed, was not capable to contract, and also that he did not know the contents of the deed when it was executed. *Held:* These findings were in conflict with the other findings stated above.

APPEAL from a judgment for the plaintiff, and from an order denying a new trial in the Superior Court of Lassen County. HENDRICK, J.

*A. L. Hart & C. G. Kelley*, for Appellant.

*E. V. Spencer & C. McCoskey*, for Respondent.

SHARPSTEIN, J.:

The findings of the jury that the deed from J. H. Harris to E. A. Harris was not signed by the former, or by any one authorized by writing to sign it, and that said deed was not delivered to the defendant (E. A. Harris) by J. H. Harris, or by any one authorized by him to deliver it, are attacked by

the appellant on the alleged ground of insufficiency of the evidence to justify them.

There is no conflict in the evidence upon either of these points. Mr. McKissick, who was called by the plaintiff, testified on his direct examination that on "the morning of May 17, 1880, Mr. E. A. Harris (father of the deceased, J. H. Harris), and A. A. Smith, and John N. White, and Doctor George Hurley, came into the deceased's room together, and E. A. Harris said: 'Didn't you tell me a few days ago that you wanted to transfer the property back to me that I transferred to you last fall? Do you want to sign it?' and deceased said 'Yes;' then A. A. Smith (a Notary Public and conveyancer) read over the description to him (deceased), and told him 'it was the same land that his father had conveyed to him (deceased) last fall,' and said: 'Do you want to sign it?' and Jimmy said 'Yes;' then Doctor Hurley said: 'Can't I help you?' and they raised him up in bed and put pillows to his back, and Doctor Hurley took hold of his right hand, and put the pen in his hand (in the usual position for writing), and guided his hand, and signed his name to the deed; then Smith (the Notary) placed the deed on the table (near by), and I (witness) signed it as a witness, as did also John N. White; then Smith (the Notary) took it, and asked him (deceased) the usual acknowledgment, and if he acknowledged it, and he (deceased) said 'Yes;' then said Smith and E. A. Harris went out of the room." And on his cross-examination, that after the Notary had asked J. H. Harris if he acknowledged the deed, and he had answered "Yes," Smith (the Notary) gave the deed to E. A. Harris (the defendant), and they went out together." Several witnesses were examined as to what occurred when the deed was signed, and they all corroborated this witness. No one contradicted him.

If, as the jury found, J. H. Harris was "in the possession and use of his mental faculties at the time said deed was signed, so as to be capable of understanding and comprehending what was being done in the execution of said deed," the findings first above referred to were not justified by the evidence. It was not necessary that the person who guided the hand of J. H. Harris while he was writing, should be authorized by writing to do so. "One signing a contract commonly

wites his name with his own hand; but, if another writes it for him in his presence and at his request, or especially if he holds the top of the pen while the other writes it, or makes his mark to his name which the other has written, or if he acknowledges the signature, however made, to be his own, this is sufficient." (Bishop on Contracts, 168.)  "The elements of a delivery are that the writing must be meant, by the maker, to take immediate effect; and be presumably, or in fact, accepted by the other party." (Id. 761.)  There can be no doubt as to the intention of the grantor that his deed should take immediate effect, nor of the acceptance of it in fact by the grantee.

There are other findings of the jury to which our attention has been directed by counsel, viz.: That J. H. Harris was conscious; that he was not capable to contract; that he acknowledged the deed.  The finding that he was not capable to contract is not a legitimate inference from the facts before found, that he was "in the possession and use of his mental faculties at the time said deed was signed, so as to be capable of understanding and comprehending what was being done in the execution of said deed."

The fact that no consideration was paid for the land, is a circumstance to be considered in connection with other facts, but is not of itself sufficient to vitiate the deed.

It appears that the land had been previously conveyed by E. A. Harris to J. H. Harris, with the understanding that it should be reconveyed.  Conceding that the object of the first conveyance was to place the property beyond the reach of the creditors of E. A. Harris, and that he could not have compelled a reconveyance of it, that would not in any way affect the validity of a voluntary reconveyance to him.

There are two more findings which seem to clash.  One is that the deed was read to J. H. Harris, or by him, before the same was signed, and the other is that he did not know its contents when it was executed.  Assuming that he was in the possession and use of his mental faculties at the time, and capable of understanding and comprehending what was done, the finding that he did not, after reading the deed or hearing it read, know its contents, is simply preposterous.

The jury found that the deed was not procured with the

intention of defrauding J. H. Harris and his heirs of said land.

From the findings of the jury the Court found as conclusions of law that the deed of J. H. Harris to E. A. Harris was null and void, and that the plaintiff was entitled to a decree canceling the deed. We, for reasons hereinbefore indicated, have arrived at the opposite conclusion.

Judgment and order reversed, and cause remanded for a new trial.

THORNTON, J., and MORRISON, C. J., concurred.