[S. F. No. 2606.  In Bank.—July 3, 1903.]

DAVID JACKS, Respondent, v. MORRIS M. ESTEE, Administrator, etc., Appellant.

MORTGAGE FOR DEBT OF ANOTHER—INCAPACITY OF MORTGAGOR—WANT OF CONSENT—INVALIDITY OF CONTRACT.—Where it appears that a note and mortgage executed by an aged person to secure the debt of another was executed on her part without sufficient mental capacity to understand their nature and effect, or to comprehend the business in which she was engaged while executing them, and that she did not, after the execution thereof, comprehend the effect thereof,—the mortgage is invalid for want of consent by a mortgagor capable of contracting and comprehending the subject of negotiation.

ID.—CONSTRUCTION OF CODE—PERSON "WITHOUT UNDERSTANDING"— EXPRESSION OF PRE-EXISTING LAW.—The provision of section 38 of the Civil Code, to the effect that "a person entirely without understanding has no power to make a contract of any kind," is to be understood as restricted to the subject-matter of contracts, and as applying to all persons who are entirely without the capacity of understanding or comprehending such transactions; and the rule therein stated is to be regarded as an expression of the previously existing law, and not limited to its literal expression.

ID.—GENERAL INCAPACITY—INSANITY—CONSTRUCTION OF FINDINGS.— A finding of the incapacity of the mortgagor to understand the particular transaction in question implies her incapacity to understand such transactions in general; and a finding that she was

never insane or adjudged insane, must be construed as consistent with or controlled by the specific facts found showing an incapacity to contract.

ID.—GOOD FAITH OF MORTGAGEE IMMATERIAL.—There being no contract on the part of the mortgagor for the want of consent of a person capable of contracting, the question of the good faith of the mortgagee and his knowledge of the condition of the mortgagor is immaterial.

APPEAL from a judgment of the Superior Court of Santa. Clara County. A. L. Rhodes, Judge.

The facts are stated in the opinion.

Jackson Hatch, and James H. Deering, for Appellant.

One who contracts with an incompetent person, who receives no personal benefit from the transaction, cannot be protected as a *bona fide* purchaser. (*Fisburne* v. *Ferguson*, 84 Va. 87; *Harding* v. *Wheaton*, 2 Mass. 384, 386; *Wartenberg* v. *Spiegel*, 31 Mich. 400.) An incompetent person is not bound to put the other party *in statu quo* as a condition of annulling the contract, especially where no beneficial consideration has been received by him personally. (*Gibson* v. *Soper*, 6 Gray, 279;[1] *Hammond* v. *Pennock*, 61 N. Y. 145, 152, 153; *Ricketts* v. *Joliff*, 62 Minn. 449; *Physio-Medical College* v. *Wilkinson*, 108 Ind. 314.)

Tuttle & Patton, for Respondent.

The mortgage was not void, but only voidable. (Civ. Code, sec. 39; *Moore* v. *Calkins*, 85 Cal. 192; *Castro* v. *Geil*, 110 Cal. 292.[2]) There was no rescission under section 1691 of the Civil Code, nor under the authorities relating to rescission of a voidable contract. (Buswell on Insanity, sec. 413; Story's Equity Jurisprudence, sec. 228; 2 Pomeroy's Equity Jurisprudence, sec. 946; *Odom* v. *Riddick*, 104 N. C. 515;[3] Devlin on Deeds, sec. 76.)

Bishop, Wheeler & Hoefler, and William Rix, for Respondent.

The findings utterly fail to show an entire want of understanding within section 38 of the Civil Code. The findings

---

[1] 66 Am. Dec. 414.          [3] 17 Am. St. Rep. 686.

[2] 52 Am. St. Rep. 84.

are to be construed to uphold the judgment, and not to defeat it. (*Breeze* v. *Brooks,* 97 Cal. 72.) The finding that the mortgagor was not insane was of an ultimate fact, and cannot be overcome by any finding of probative facts. (*Smith* v. *Acker,* 52 Cal. 219; *Gill* v. *Driver,* 90 Cal. 72, 74; *Perry* v. *Quackenbush,* 105 Cal. 299, 305, 306; *Rankin* v. *Newman,* 107 Cal. 602, 608; *Commercial Bank* v. *Redfield,* 122 Cal. 405, 408.)

SMITH, C.—This is an appeal by defendant from a judgment foreclosing a mortgage, or alleged mortgage, of his intestate, Mrs. Maria T. Divine; who died in March, 1898, leaving as her sole heirs Mrs. Lillie T. Sparks and Mrs. Frances D. Estee, wife of the defendant.

The case as presented by the record is as follows: The consideration of the alleged mortgage—which is of date June 1, 1896, and for the amount of nine thousand five hundred dollars—was the future satisfaction of an indebtedness of something over nine thousand dollars due to the plaintiff from Mrs. Sparks, payable October 19, 1896, and secured by mortgage and notes, and the payment to Mrs. Sparks of the further sum of $221.55; which was accordingly paid to her on the order of Mrs. Divine, and the mortgage subsequently satisfied.

The execution of the note and mortgage sued on is denied in the answer; and in a cross-complaint filed by the defendant it is in effect alleged that at the date of their alleged execution the intestate, who was of the age of eighty-five years, was, on account of mental infirmity, unable "to understand or appreciate any act or transaction bearing upon or relating to her property rights and interests, and entirely unable mentally to do or transact any kind of business, or to understand the nature thereof"; and that the mortgage and note were procured by undue influence and fraud, as the result of a conspiracy between the plaintiff and Mrs. Sparks. But the allegation as to conspiracy is negatived by the findings, and need not be further considered.

The findings as to other issues in the case, so far as they bear on the questions to be considered, are as follows: It is found by the court that "Mrs. Divine *executed* and delivered to the plaintiff the promissory note . . . and . . .

mortgage" in question,—the latter including "all her property . . . except certain parcels of relatively small value"; and in addition the following facts are specially found:—

The intestate, "at the time of the execution by her of the promissory note and mortgage in question, and for a considerable period next before that time, *did not have sufficient mental capacity to understand the purpose and effect of the promissory note and mortgage executed by her; . . .* but because of her age and her physical infirmities, and the impairment of her mental faculties prior to and at the date of the execution of said note and mortgage, she *did not possess sufficient mental capacity to enable her to comprehend the business in which she was engaged while executing the said note and mortgage."* But "she was not insane then, nor was she ever insane." "Nor was she ever legally found or adjudged by any tribunal to be incompetent or insane."

"At the time of the execution by Mrs. Divine of the said promissory note and mortgage, and shortly prior to that time, her advanced age (to wit, eighty-six years) and the feeble condition of her health, was known to the mortgagee through his agents, who acted for him in said transaction; . . . [and] shortly prior to that time, said mortgagee, through his agent, had notice of *the want of sufficient capacity on the part of Mrs. . . . Divine to comprehend the nature and effect of that transaction."*

"Mrs. Divine lived about two years after the execution and delivery by her of the said note and mortgage. Her intellectual capacity decreased from the time of the execution of the note and mortgage to the time of her death; and she did not at any time after the execution and delivery of said note and mortgage exercise or attempt to exercise the right of rescinding said note or mortgage; *nor did she, after the execution thereof, comprehend the effect thereof."*

No offer or attempt to rescind the note and mortgage has been made by the defendant otherwise than by the rejection of the plaintiff's claim, which was on February 14, 1898. Nor has the money paid by the plaintiff been repaid, or any offer made to repay it, by the defendant or his intestate or either of the heirs.

"The plaintiff herein had no actual knowledge of the men-

tal weakness and *inability of Mrs. Divine to transact business or to understand the nature thereof. . . ."*

"In said transaction between plaintiff and Mrs. Divine, the said plaintiff *and his agents* dealt with her, in and about said transaction, in good faith, and upon the understanding that *she was competent to transact business,* so far as it appertained to her property; and in the same good faith canceled the debt of Mrs. Sparks to the plaintiff."

(The italics are ours.)

Upon the above findings, two questions present themselves for consideration,—the one relating to the competency of the parties to contract, the other to the fact of their contracting.

The former of these questions involves the construction of the provisions of section 38 of the Civil Code, to the effect that "a person entirely without understanding has no power to make a contract of any kind." Here, obviously, the term "understanding" is used to denote not the act of understanding, but the capacity or faculty of doing so; and the expression "without understanding" is to be understood as referring to persons without such capacity. Nor is the expression to be understood in its literal and extreme sense,—for hardly in any case can even the most insane persons be said to be without some degree of understanding, (1 Wharton on Contracts, sec. 98) ; but rather it is to be understood as restricted to the subject-matter to which the section relates,—which is that of contracts, executed and executory,—and hence as applying to all persons who are entirely without the capacity of understanding or comprehending such transactions. (1 Blackstone's Commentaries, 60, cited in Sedgwick on Statutory and Constitutional Law, 236n.)

We do not doubt, therefore, the sufficiency of the cross-complaint—which alleges the general incapacity of the intestate to understand business transactions—to bring the case within the provisions of section 38. But the findings do not go so far as this, but find only her incapacity to understand or comprehend the particular transaction in question. Hence the questions arise, whether the finding brings the case within the provisions of the statute; and if otherwise, whether it may be inferred from the findings taken together that it was the intention of the court to find a general incapacity in the intestate.

As to the former question, it may be said that the case comes within the reason of the rule, and that the rule itself is to be regarded as an expresssion of the previously existing law, and hence as not limited to its literal expression. And this view of the meaning of the section seems to be supported in some degree by what is said by the court in *Harris* v. *Harris,* 59 Cal. 621; nor is it in conflict with the decisions in *Moore* v. *Calkins,* 85 Cal. 182, 190, and *Castro* v. *Geil,* 110 Cal. 294, 296.

As to the other question, the finding of the incapacity of the intestate to understand the particular transaction in question, which was of a very simple nature, seems necessarily to imply her incapacity to understand such transactions in general; and that such was the understanding of the court appears from other findings, where "the mental weakness and inability of Mrs. Divine to transact business [i. e. any business] or to understand the nature thereof," and the understanding of the plaintiff "that she was competent to transact business," are alluded to.

There is indeed a finding that Mrs. Divine was not insane at the time of the transaction or ever, and this seems to be in conflict with the findings we have been considering. For the term "insane" (meaning, according to its etymology, "non sane" or "unsound") is equivalent, as is said by Lord Hardwicke, to "non compos" (*Ex parte Barnsley,* 3 Atk. 172), which, according to Coke, includes all kinds of mental unsoundness recognized by the law (Coke on Littleton, 246b; 4 Coke, 124b), and must therefore include the extreme case of an entire want of understanding. But we must suppose that the term was used by the court in some sense consistent with the specific facts found, (*Schultz* v. *McLean,* 93 Cal. 329,) and, at all events, the latter must control. (*Hidden* v. *Jordan,* 28 Cal. 301; *Warder* v. *Enslen,* 73 Cal. 291.) It would seem, therefore, on the facts found, that Mrs. Divine was not competent to execute the note or mortgage sued on. Or, if there be any doubt on that point, it is at least clear on the findings that she did not execute them. For it is agreed that consent or assent is essential to the existence of a contract (Civ. Code, secs. 1550, 1565 et seq.), and hence that "a man cannot be said to assent, . . . unless he be endowed with such "degree of

reason and judgment as will enable him to comprehend the subject of negotiation.'' (1 Chitty on Contracts, 185; 1 Parsons on Contracts, 383; 1 Wharton on Contracts, sec. 98; Pollock on Contracts, 79; *Jackson* v. *King*, 4 Cow. 207;[1] *Dexter* v. *Hall*, 15 Wall. 20; 2 Greenleaf on Evidence, sec. 300.) It is therefore clear that in fact there was no contract, and hence the question as to the good faith of the plaintiff, and his knowledge of the condition of Mrs. Divine at the time of the transaction, is immaterial.

On the facts found, ordinarily the proper judgment to be entered would be a judgment for the defendant; but in the case as it stands there are several reasons why this relief would be inappropriate. Among these, the most important is the lack of the necessary parties to enable the court to determine fully the controversy. For it appears from the findings that the plaintiff was led into the acceptance of the note and mortgage by the principal parties in interest, and it may be that upon their being made parties a case might be made against them on the ground of estoppel. So also Mrs. Sparks should be made a party, in order that the plaintiff or the defendant, as the case may be, may have the opportunity of asserting his remedy, if any he has, against her.

We advise that the judgment appealed from be reversed and the cause remanded to the lower court for further proceedings, in accordance with the views expressed in this opinion, and for new trial.

Haynes, C., concurred.

For the reasons given in the foregoing opinion the judgment appealed from is reversed and the cause remanded to the lower court for further proceedings, in accordance with the views expressed in this opinion, and for new trial.

Shaw, J.,   McFarland, J., Van Dyke, J., Lorigan, J., Angellotti, J.

Rehearing denied.

[1] 15 Am. Dec. 534, and note, p. 361; 71 Am. St. Rep. 426, note.