(February 14, 1907.)

## ROBERT RATLIFF, Appellant, v. CHRISTIAN BALT-ZER'S ADMINISTRATOR, Respondent.

[89 Pac. 71.]

INSANE PERSON—PERSON ENTIRELY WITHOUT UNDERSTANDING—PERSON NOT ENTIRELY WITHOUT UNDERSTANDING—CONTRACT OF—RESCISSION.

1. Under the provisions of section 2410, Revised Statutes, a person entirely without understanding has no power to make a contract of any kind, but is liable for the reasonable value of things furnished to him necessary for his support or the support of his family.

2. Under the provisions of section 2411, Revised Statutes, a conveyance or other contract of a person of unsound mind, but not entirely without understanding, made before his incapacity has been judicially determined, is subject to rescission.

3. Where a person is not entirely without understanding, and makes a contract, comprehending its full force and effect, and no fraud or deceit has been practiced upon him, such a contract will not be rescinded under the provisions of section 2411, Revised Statutes.

4. Contracts made by such a person are not absolutely void, but only voidable.

5. *Held,* under the evidence in this case, that B. was competent to make the contract sued on, and that he is bound thereby.

(Syllabus by the court.)

APPEAL from the District Court of Seventh Judicial District for Canyon County. Hon. Frank J. Smith, Judge.

Action to foreclose a mortgage. Defense, incapacity of mortgagor to execute the contract. Judgment for respondent. *Reversed.*

Ralph P. Quarles and L. M. Pritchard, for Appellant.

The real test of respondent's competency was, Did he understand the nature and effect of the deed, and of the note and mortgage that he gave at the time they were made? If so, he was competent to make them, and they are valid and binding on him and on his estate, unless it is shown that fraud was practiced. The evidence does not show any such fraud. It shows that Ratliff had no knowledge or cause to think, at the time he sold the land, that Baltzer was mentally unsound. (*Kelly v. Perrault,* 5 Idaho, 221, 48 Pac. 45; *In re Carmichael,* 36 Ala. 514; *McDaniel v. Crosby,* 19 Ark. 533; *Lemon v. Jenkins,* 48 Ga. 313; *Raymond v. Wathen,* 142 Ind. 374, 41 N. E. 815; *Teegarden v. Lewis,* 145 Ind. 101, 40 N. E. 1047, 44 N. E. 9; *Bond v. Bond,* 7 Allen (Mass.), 1; *Dennett v. Dennett,* 44 N. H. 531, 84 Am. Dec. 97; *Wilkinson v. Sherman,* 45 N. J. Eq. 413, 18 Atl. 228; *Aldrich v. Bailey,* 132 N. Y. 85, 30 N. E. 264; *Moffitt v. Witherspoon,* 10 Ired. (N. C.) 185; *Wright v. Jackson,* 59 Wis. 569, 18 N. W. 486; *Greenwade v. Greenwade,* 43 Md. 315; *Mullins v. Cotrell,* 41 Miss. 291; *Jencks v. Smithfield,* 2 R. I. 255.)

But the law goes further, and holds that to avoid the contract on the ground of mental incapacity it must appear that the party was so insane that he did not have a reasonable perception or understanding of the nature of the contract and of its terms. The evidence shows to the contrary in this case. (*Elwood v. O'Brien,* 105 Iowa, 239, 74 N. W. 740; *Farnam v. Brooks,* 9 Pick. (Mass.) 212; *Cutler v.*

*Zollinger,* 117 Mo. 92, 22 S. W. 895; *Richardson v. Smart.* 65 Mo. App. 14; *Aldrich v. Bailey, supra; Buckey v. Buckey,* 38 W. Va. 168, 18 S. E. 383.)

Monomania or partial insanity does not disqualify, and is no cause for rescission. (*Marks v. Hill,* 15 Gratt. 422; *Converse v. Converse,* 21 Vt. 168, 52 Am. Dec. 58; *Hill v. Nash,* 41 Me. 585, 66 Am. Dec. 266; *Piddock v. Potter,* 68 Pa. St. 348, 8 Am. Rep. 181; *Benoist v. Murrin,* 58 Mo. 307; *Wetter v. Habersham,* 60 Ga. 194; *Maynard v. Tyler,* 168 Mass. 107, 46 N. E. 413; *Rice v. Rice,* 50 Mich. 448, 15 N. W. 545; *Bovard v. State,* 30 Miss. 600; *Boardman v. Woodman,* 47 N. H. 120; *Shreiner v. Shreiner,* 178 Pa. St. 57, 35 Atl. 924; *Puryear v. Rees,* 6 Cold. (Tenn.) 21; *Denson v. Beazley,* 34 Tex. 191; *Gardner v. Lambeck,* 47 Ga. 133; *Trumbull v. Gibbons,* 22 N. J. L. 117; *Potter v. Jones,* 20 Or. 252, 25 Pac. 769, 12 L. R. A. 161; *Burkhart v. Gladdish,* 123 Ind. 337, 24 N. E. 118; *Gordon v. Whitlock,* 92 Va. 723, 24 S. E. 342; *In re Redfield,* 116 Cal. 637, 48 Pac. 794.)

Section 2411, Revised Statutes, was taken bodily from California, and the supreme court of that state has held that the statute prescribes no new rule, but is simply declaratory of what the law was prior to its enactment. This is undoubtedly correct. (*More v. Calkins,* 85 Cal. 177, 24 Pac. 729; *Castro v. Geil,* 110 Cal. 292, 52 Am. St. Rep. 84, 42 Pac. 804; *Jacks v. Estee,* 139 Cal. 507, 73 Pac. 247; *Harris v. Harris,* 59 Cal. 620.) This statute simply affirms the common-law rule, shown by the authorities hereinbefore cited, and leaves the manner of applying the rule to the courts, without prescribing the manner in which it is to be applied, and hence it must be applied in harmony with the rules of equity and the common law. (2 Lewis' Sutherland on Statutory Construction, 2d ed., 453, 456.)

E. M. Wolfe, for Respondent.

It is argued that Baltzer wrote the deed; that he knew he was writing a deed; that he knew that the deed transferred the property from Ratliff to himself; therefore he

knew what he was doing, and the deed must stand. The deed is Baltzer's written testimony that he was, at that time, crazy. It shows that instead of knowing what he was doing, he did not know what he did.

A further very important fact is that Mr. Ratliff sold the ranch for $1,000 more than it was worth, one-third more than he had offered it for a month before. This was a plain fraud upon a weak-minded person, which will not be sustained in any court of equity. (*Crowthers v. Rowlandson,* 27 Cal. 377; *Moore v. Moore,* 56 Cal. 89; *Boyer v. Berryman,* 123 Ind. 457, 24 N. E. 249; *Pearson v. Cox,* 71 Tex. 246, 10 Am. St. Rep. 740, 9 S. W. 124; *Eaton v. Eaton,* 37 N. J. L. 109, 18 Am. Rep. 716; *Hovey v. Hobson,* 53 Me. 452. 39 Am. Dec. 705; *Reason v. Jones,* 119 Mich. 672, 78 N. W. 899; *Burnham v. Kidwell,* 113 Ill. 125; *Sedgwick v. Jack,* 111 Iowa, 745, 82 N. W. 1027; *Hay v. Miller,* 48 Neb. 158, 66 N. W. 1115; *Allore v. Jewell,* 94 U. S. 506, 24 L. ed. 260.)

SULLIVAN, J.—This action was brought by the appellant against the respondent to foreclose a certain mortgage on real estate given to secure the payment of the respondent's promissory note for the sum of $2,000. The defendant by his guardian answered and filed his cross-complaint. By the answer it is admitted that the respondent signed said note and mortgage, but that he was of unsound mind and mentally incompetent to sign and execute them, or to transact any business whatever at the time they were signed.

By way of cross-complaint, the guardian alleges that the respondent was of unsound mind, and mentally incapable of executing said note and mortgage, or of transacting any business whatever at the time he signed them, and that on the twenty-second day of June, 1904, the said Baltzer was declared insane by the probate court of Owyhee county; that on or about the eighteenth day of May, 1904, while the respondent was so insane and incompetent, the appellant sold to him the property described in the complaint and included in said mortgage, for the sum of $3,000; and that on that day the respondent paid in cash to the appellant $1,000, and on that

date the appellant executed to the defendant a deed purporting to convey said described real estate to Baltzer, and that for the purpose of securing the balance of the purchase price, the appellant took from the defendant the mortgage described in the complaint, well knowing at that time, and for a long time prior thereto, said Baltzer was of unsound mind and mentally incompetent to transact any business; that at the time said deed and mortgage were made said real estate was of no greater value than the sum of $1,500, and that fact was well known to the appellant, and because of that fact the appellant committed a fraud on the defendant; and on information and belief, it is alleged that the deed to said real estate was never delivered to the said Baltzer, and that on or about the nineteenth day of April, 1905, said deed was handed to the guardian by the appellant, at which time the said guardian refused to accept said deed, but regardless of that fact the appellant left the deed in possession of the guardian; and that the mortgage described in appellant's complaint was never delivered to the appellant by the defendant or by any person at his request; that the respondent never took possession of the property described in the complaint, or any part thereof, and that appellant remained in possession thereof; that the guardian offered to transfer to the appellant all rights or claims of the defendant in and to said property, and requested him to return the $1,000 paid on the purchase price thereof, which he refused to do; that the said guardian is now ready, able and willing to relinquish all rights that said respondent may have in and to said property and prays for judgment; that the mortgage may be canceled; that said deed be returned to plaintiff; that the said appellant be required to pay to said guardian the said sum of $1,000, together with interest at the rate of ten per cent from the eighteenth day of May, 1904, and for such other and further relief as may be just and equitable.

The appellant answered the cross-complaint and denied the material allegations therein contained, and averred that at the time of said transaction the respondent was sane,

was of sound mind, and fully knew and realized what he was doing; and denied that said land was not at that time worth to exceed $1,500, and avers that it was worth $3,000, or more.

The issues thus made were tried before the court without a jury, and findings of fact were made and entered in favor of the defendant, and judgment was entered thereon in his favor, whereby said note and mortgage were canceled and judgment against the appellant was entered for the sum of $1,000, with interest thereon at seven per cent from the eighteenth day of May, 1904.

We will observe here that the judgment contained in the transcript provides for interest at ten per cent, but it was stated in the oral argument that a waiver had been filed by counsel for respondent, whereby he waived ten per cent interest and only claimed seven per cent.

The appeal is from the judgment, and was taken within sixty days after the entry thereof. Numerous errors are assigned, based on the admission and rejection of certain testimony and the refusal to strike out certain evidence, and that the evidence is insufficient to support certain findings made by the court; and the failure to find on certain issues made by the pleadings.

We shall refer to Baltzer as the respondent, for convenience, when, as a matter of fact, Baltzer was represented by a guardian or administrator from the commencement to the termination of this action.

*In limine* we will state that the evidence shows that the respondent, Baltzer, was a Dane, forty-two years of age, and unmarried; that he had lived in Bruneau Valley, Owyhee county, for a number of years and was engaged in the mercantile business; that he was a keen, shrewd business man; that about the time the transaction involved in this case occurred there was considerable excitement in the Bruneau valley over a certain reservoir and canal scheme that was in course of construction in that valley; that it was the impression that if that scheme was completed, agricultural lands in that valley would increase greatly in value; that respondent Baltzer was furnishing the contractors and workmen on

that scheme with considerable of their merchandise and sup-plies; that during the months of March, April and May, 1904, said Baltzer purchased four farms in said valley, in-cluding the one involved in this case.

It also appears that Baltzer acted peculiarly on a number of occasions—differently from what was his habit; he was very fond of music, and at times would try to sing and play on musical instruments, when, as a matter of fact, he could neither sing nor play. He became enamored of a school teacher and would dance for her. He bought two peacocks that pleased his fancy, and also a mare which he seemed to take great pleasure in riding. He did many of those things during the months of April and May, 1904, during which months he continued to carry on his mercantile business. On the fifteenth day of May, he and a nephew went to the ranch of the appellant, that being the ranch in question, and looked it over, took dinner with the appellant, and finally on that day agreed to purchase the same at the price of $3,000. Thereafter, on the eighteenth day of May, the bargain was closed; Baltzer drew the deed himself and the appellant ex-ecuted it and left it with Baltzer. At that time Baltzer drew his check in favor of appellant for $1,000, which was a pay-ment on the purchase price, and gave to the appellant a note for $2,000 due on demand, for the remainder of the purchase price. On June 5, 1904, Baltzer executed the promissory note sued on herein in lieu of the first one, for $2,000, due thirty days after date, and executed said mortgage on said farm to appellant, to secure the payment of said note.

It appears that a son of the appellant was on the ranch and had rented it for the year 1904, and it was agreed be-tween the parties that said tenant should become the tenant of the respondent and hold the possession of said premises for him.

On the twenty-second day of June, 1904, Baltzer was ad-judged insane and sent to the Blackfoot Insane Asylum; he remained there about six weeks; from there he was taken to Denmark by his nephew, and the evidence shows that at the time of the trial of this case he was in an insane asylum in

Denmark. It also appears that he died there some time after the trial of this case. Before his death, one John Mitchell was appointed by the probate court of Owyhee county, as guardian of his person and estate, and said Mitchell refused to pay to appellant the amount due on said promissory note of $2,000, on the ground that said Baltzer was insane and incompetent to transact any business at the time he purchased said farm from appellant and at the time he executed said note and mortgage; and the real question in this case is, Was said Baltzer competent to make the contract whereby he purchased said farm?

There is considerable opinion testimony contained in the record upon that question. While some of the witnesses are of the opinion that Baltzer was incompetent to make a contract, there is the testimony of other witnesses to the contrary.

It is contended by counsel for respondent that section 2411, Revised Statutes, protects a class of incompetent persons and that Baltzer comes within that class. The section is as follows: "A conveyance or other contract of a person of unsound mind, but not entirely without understanding, made before his incapacity has been judicially determined, is subject to rescission."

That section is taken from section 39 of the Civil Code of California.

It has been declared by the supreme court of California that the provisions of sections 38 and 39 of the Civil Code are to be regarded as expressions of the previously existing law. The rule laid down by said section 38 is that a contract of a person entirely without understanding is void, and section 39 provides that the contract of a person not entirely without understanding is subject to rescission. (*Jacks v. Estee,* 139 Cal. 507, 73 Pac. 247; *More v. Calkins,* 85 Cal. 177, 24 Pac. 729; *Castro v. Geil,* 110 Cal. 292, 52 Am. St. Rep. 84, 42 Pac. 804; *Harris v. Harris,* 59 Cal. 620.)

Those sections are substantially the same as sections 2410 and 2411, Revised Statutes. The first section contains the phrase, "entirely without understanding," while the latter

o

section contains the phrase, "not entirely without understanding."

It has been a well-recognized rule for many years that a person "entirely without understanding" has no power to make a contract of any kind, but is liable for the reasonable value of things furnished to him necessary for his support and the support of his family. And also it is a rule well established that the conveyance or other contract of a person of unsound mind "but not entirely without understanding" made before his incapacity has been judicially determined, is subject to rescission.

It is also well recognized that a person may be insane on one subject and perfectly sane on another. Such a person is not "entirely without understanding," and if he makes ·a contract concerning matters on which he is sane, and it appears to the court that no fraud or deceit has been practiced upon him, that he fully comprehended the purpose and effect of his contract, that he has not been overreached, such a contract will not be rescinded. But where it is made to appear that a person is insane upon one subject, his contracts in regard to other matters will be scrutinized closely by courts when their validity and his competency to make them are questioned.

Contracts made by such a person are not absolutely void—only voidable. (*Caldwell· v. Ruddy*, 2 Idaho, 1, 1 Pac. 339; *Dexter v. Hall*, 15 Wall. 9, 21 L. ed. 73.) The case of the *French Lumbering Co. v. Theriault*, 107 Wis. 627, 81 Am. St. Rep. 856, 83 N. W. 927, 51 L. R. A. 910, is a well-considered case upon the question under consideration, and holds that a deed made by an insane person, not under guardianship, is voidable only. Justice Marshall, who prepared that opinion, reviewed many cases, and came to the conclusion that there was some conflict of authority in this country and between the courts of this country and those of England regarding the character of an insane person's deed, and said: "In England it is held that such a deed is absolutely void. There are a few authorities to the same effect in this country, most or all of which, upon a careful ex-

amination, will be found to be quite undecisive and unsatisfactory. The text-writers are in substantial accord that an insane person's deed conveys title to the grantee, and is voidable only." In support of that rule, he cites Devlin on Deeds, sec. 73; 1 Washburn on Real Property, 5th ed., p. 486, and many other authorities. To *Riley v. Carter,* 76 Md. 581, 35 Am. St. Rep. 443, 25 Atl. 667, 19 L. R. A. 489, is an exhaustive note upon the question under consideration.

Baltzer was not "entirely without understanding," and the evidence shows that he possessed mental capacity sufficient to understand the purpose and effect of the transaction herein sued on, and it does not appear that any deception or fraud was practiced upon him in said transaction. Therefore, there is no good reason why said contract should be rescinded, and under the provisions of said section 2411 a court will not rescind a contract unless there is some good reason for doing so. The mere fact that Baltzer was "off" or insane on some questions would not justify the court in rescinding a contract entered into by him where he fully understood its purpose and effect, and where the evidence shows the utmost good faith and fair dealing on the part of the other contracting party.

It is a well-recognized fact that a person may be insane on one subject and perfectly sane on another. Such a person is recognized as one of "unsound mind but not entirely without understanding," and under the law a court may hold the contract of such a person valid and binding, or otherwise. Each case must stand upon its own facts. Now in the case at bar, the evidence shows that Baltzer on the subject of music was not exactly in his right mind; it also appears that he ordered more goods of certain kinds than his business warranted. But when we take into consideration the fact that there was a prospective boom on in that region of the country, and he ordered more goods than the facts subsequently warranted, we cannot conclude that he did differently in that regard than an ordinarily sane man might have done under the same facts and circumstances. There

was a prospective increase in the value of real estate in that region of country, and it is not an indication of insanity for a person to buy real estate under those circumstances with a hope of realizing a profit thereon, as was done by Baltzer.

Taking the evidence all together, it clearly shows that Baltzer fully understood what he was doing when he purchased the land in question. He made the bargain for it, drew the deed, which the plaintiff signed, conveying the title of said land to himself, and drew his check for $1,000, which was paid. The evidence clearly shows that he fully understood the contract, and we think the evidence shows that he was competent to make it.

Some stress is laid upon the fact that he paid more for the farm than it was worth. According to the testimony of defendant's witnesses, the farm was worth only about $2,000, and according to the testimony of the witnesses of the plaintiff, the farm was worth $3,000. We do not think the fact that Baltzer paid $3,000 for the land, under the facts disclosed by the evidence, was any indication that he was insane, and did not fully understand the force and effect of his contract.

From the latter part of May until he was declared insane by the probate court, it appears that he grew rapidly worse, but that fact is not a test of his competency to enter into the contract referred to on the 18th of May, 1904. Unless the evidence shows the impairment of his mental faculties was such as to entirely make him without understanding, his contract could not be absolutely void; but if his mental capacity was such as to enable him to understand the purpose and effect of the contract entered into, and the purpose and effect of the note and mortgage sued on in this action, then his contract is only voidable—not absolutely void—and it is subject to rescission by a court of equity only upon the showing that he did not have mental capacity sufficient to understand the purpose and effect of the contract, or that fraud or deception was practiced on him.

Points Decided.

The judgment must be reversed and the cause remanded, with instructions to grant a new trial, and it is so ordered.

Costs are awarded to the appellant.

Ailshie, C. J., concurs.