HOCHGRABER, Respondent, v. BALZER, Appellant
(JOHNSON, Intervenor and Appellant)

(287 N. W. 585.)

(File No. 8244.   Opinion filed September 8, 1939.)

*L. P. Johnson,* of Mankato, Minn., *Philo Hall,* of Brookings, and *M. P. Schaefer,* of Ivanhoe, Minn., for Appellant.

*Wallace E. Purdy,* of Brookings, for Respondent Herman Hochgraber.

*E. A. Berke,* of Brookings, for Defendant J. H. Balzer.

SMITH, J. The instant controversy deals with the ownership of two promissory notes. Their maker, the defendant Balzer, claims no defense. The issue is between plaintiff as personal representative of the deceased payee, Wilhelmina Hochgraber, and the intervenor, L. P. Johnson, who claims as an endorsee. The plaintiff does not admit the endorsement of the notes by the deceased payee, and alleges that if she so endorsed them, she did so when she was without contractual capacity either because of actual mental incapacity or because a guardian of her person and her estate had theretofore been appointed. The action, brought for the purpose of enforcing said notes against the maker, was commenced by the guardian of the person and estate of Wilhelmina Hochgraber, and was tried during her life. She having subsequently passed away, an order was made substituting her executor as the plaintiff respondent.

The notes were originally made by defendant Balzer to represent rent reserved in a farm lease under which he was renting land from Wilhelmina Hochgraber. Testimony on behalf of the intervenor tended to show that Mrs. Hochgraber had endorsed and transferred the notes to her daughter, Martha Junge, that on the 15th day of October, 1935, Martha Junge delivered the same, unen-

dorsed, to the intervenor in payment of an indebtedness she then owed him for professional services, that within a few days thereafter she endorsed them to M. P. Schaefer (Johnson's former partner who then had an interest in the unpaid account), and he, in turn, thereafter endorsed the same to Johnson. On November 21, 1935, an order was made adjudicating Wilhelmina Hochgraber to be incompetent and appointing a guardian of her person and estate. Reference is made to the mental capacity of the deceased, as reflected by the evidence, in the body of our opinion. The guardian expressed the opinion that the endorsements appearing on the note purported to have been made by Wilhelmina Hochgraber were not in her handwriting.

The instructions to the jury permitted them to find against the intervenor on three separate theories, namely, (1) that the deceased did not endorse the notes, (2) that she did not make such endorsement prior to the time she was adjudicated to be incompetent, or (3) that at the time of making said endorsements she was actually without contractual capacity. The instructions to which we have made reference were not excepted to.

The jury returned a verdict for plaintiff. From a judgment thereon, and from an order overruling a motion for new trial, intervenor appeals.

The instruction of the learned trial court dealing with the mental capacity of Wilhelmina Hochgraber may be best understood if viewed and interpreted in the light of our statutes. Our law recognizes two distinct types or classes of unsound minds, namely, a mind so unsound as to be "entirely without understanding" and one that is unsound but "not entirely without understanding." A person "entirely without understanding" is without capacity to contract, and any contract attempted by him is void although he may become liable for the reasonable value of certain necessities. Section 86, Rev. Code of 1919, SDC 30.0801. On the other hand, the contracts of a person whose mind is unsound but "not entirely without understanding" are voidable and subject to rescission. Section 87 Rev. Code of 1919, SDC 30.0802, and see Mach v. Blanchard, 15 S. D. 432, 90 N. W. 1042, 58 L. R. A. 811, 91 Am. St. Rep. 698; Lynn v. Schirber, 45 S. D. 10, 186 N. W. 570; Fischer et al. v. Gorman et al., 65 S. D. 453, 274 N. W. 866, 869. In the case last cited we had occasion to consider the phrase "en-

tirely without understanding," and quoted with approval the words used by the Supreme Court of California in the case of Jacks v. Estee, 139 Cal. 507, 73 P. 247, as follows: "Here, obviously, the term 'understanding' is used to denote not the act of understanding, but the capacity or faculty of doing so; and the expression 'without understanding' is to be understood as referring to persons without such capacity. Nor is the expression to be understood in its literal and extreme sense, for hardly in any case can even the most insane persons be said to be without some degree of understanding (1 Wharton on Cont. § 98) ; but rather it is to be understood as restricted to the subject-matter to which the section relates—which is that of contracts, executed and executory—and hence as applying to all persons who are entirely without the capacity of understanding or comprehending such transactions."

█  The instruction of the trial court did not use the words "entirely without understanding," but in our opinion it adequately described that type of mind. The court instructed the jury in substance that they could find against the intervenor if, at the time Wilhelmina Hochgraber endorsed such notes, "she was of unsound mind and or was unable to understand the nature of the transaction and to understand her property rights and did not have the mental ability to act according to definite purposes and desires of her own with relation to her property." Thus it is apparent that the question submitted to the jury by the court under this branch of the case was whether the endorsement of Wilhelmina Hochgraber was void ( as distinguished from voidable) for utter lack of contractual capacity. Lynn v. Schirber, supra.

█  Although the intervenor did not and does not question the law as thus expounded by the learned trial court, he has preserved the record throughout on the theory that the evidence is wholly insufficient to establish that Wilhelmina Hochgraber was a person entirely without contractual capacity as thus defined. No useful purpose will be served by abstracting or outlining the evidence directed to this issue. Suffice it to say that we have made a careful analysis of the same in the light of the well established principles applicable where a trial court has passed upon the evidence at the trial and again under a motion for new trial, and we have concluded that the evidence is not sufficient to support an inference that Wilhelmina Hochgraber was a person of unsound

mind of the class described by this instruction at any time prior to the time of her adjudication as an incompetent. That the evidence supports an inference that she was aged, forgetful, unreasonable, careless of herself and her property, and that her eye sight was failing, may not be questioned. However, we find no substantial evidence from which a jury could with reason infer that her mental powers had disintegrated to such an extent that she could not understand the nature of a promissory note and the legal effect of an endorsement and delivery thereof to her daughter, or to indicate that she was incapable of forming and executing a desire to so endorse and deliver the notes in question. Cf., Lynn v. Schirber, supra.

A further examination and analysis of the evidence has convinced us that it is wholly insufficient to support an inference that Wilhelmina Hochgraber endorsed and transferred the notes in question to her daughter after she was adjudicated to be incompetent.

An assignment dealing with the admission of evidence requires consideration. After the guardian had been permitted to express the opinion that the name of Wilhelmina Hochgraber appearing as an endorsement on the notes was not in fact in the handwriting of his ward, the following proceedings were had: Counsel for plaintiff was engaged in the cross examination of the intervenor. He asked this question: "State whether or not a portion of the professional services you performed for Martha Junge was defending her against a charge of forgery in the Brookings County Circuit Court." The following objection was interposed: "That is objected to as immaterial, not in issue in this case and I object to the question in the manner in which it is asked as containing an implied accusation against Mrs. Junge for forgery as highly prejudicial, and utterly immaterial." The objection was overruled and the question was answered in the affirmative.

We are not unmindful of the principle which permits the trial court, in the exercise of a sound discretion, to allow the cross examination of a party to extend over a wide latitude. This historic right or privilege of cross examination, however, may not be used for an illegitimate purpose. The illegitimacy of the purpose of counsel in asking the foregoing question was obvious. It

is equally manifest that the answer was highly prejudicial to the intervenor. The objection should have been sustained.

It follows that we are of the opinion that the learned trial court erred to the prejudice of the intervenor in the particulars herein set forth, and because of such errors it should have granted the motion for a new trial.

The order and judgment of the trial court are reversed.

All the Judges concur.