JULIA PELLETREAU, appellant, *vs.* CORNELIA SMITH, respondent.

A testator, by his will, gave and devised to his wife J. all his estate, real and personal, so long as she remained his widow; making no disposition of the estate in remainder, which accordingly descended to C. his heir at law. The personal estate proving insufficient to pay the debts, J. the executrix applied to the surrogate for authority to mortgage, lease or sell the real estate of the testator, for that purpose, and that she be allowed to sell, in the first instance, the reversionary interest of C. therein. The petitioner claimed that the estate in remainder should be first sold, and the proceeds applied to the satisfaction of the debts; or that the value of her life estate in the premises should be computed and ascertained upon the principles applicable to annuities, and deducted from the proceeds of the sale, and the residue applied to the satisfaction of the debts, before any part of the ascertained value of the petitioner's life estate should be appropriated to that object. The surrogate made a decree authorizing a sale of the land, and directed that the proceeds be applied to the payment of the debts; taking no notice of, and giving no preference to, the estate of J. as tenant for life, over that of C. in remainder.

*Held* that the rule of distribution contended for by J. was inconsistent with the directions of the statute; and that the decree of the surrogate was right.

APPEAL from an order of the surrogate of the county of Suffolk. The facts are stated in the opinion of the court.

*George Miller,* for the appellant.

*W. P. Buffett,* for the respondent.

*By the Court,* BROWN, J. This is an appeal from an order or decree of the surrogate of the county of Suffolk directing the sale of certain lands, whereof Henry Pelletreau died seised, and the application of the proceeds to the payment of his debts. The proceedings were instituted by the appellant, who is the executrix and also the devisee of the testator. By the will he gives and devises to his wife, the appellant, all his estate, both real and personal, so long as she remains his widow, and makes no disposition of the estate in remainder, which accordingly descends to the respondent, Cornelia Smith, his heir at law. The personal estate proved insufficient to pay the debts,

and hence these proceedings to sell the lands. The surrogate made the usual decree, and adjudged that the proceeds be applied to the payment of the debts, taking no notice of, and giving no preference to, the estate of the tenant for life over that of the person entitled to the estate in remainder.

The appellant contends that the estate in remainder should be first sold and the proceeds applied to the satisfaction of the debts in the first instance; or that the value of the petitioner's life estate in the premises should be computed and ascertained upon the principles applicable to annuities, and deducted from the proceeds of the sale, and the residue applied to the satisfaction of the debts, before any part of the ascertained value of the petitioner's life estate is appropriated to that object. This is quite an ingenious theory, and one strictly consonant to justice and equity, for it is apparent that the testator intended the devisee for life should be the principal and primary object of his bounty. This, however, is not a proceeding where the various estates and interests which might be carved out of the entire fee can be recognized and adjusted upon equitable principles. The authority of the surrogate is derived solely from the statute concerning the powers and duties of executors and administrators, in relation to the sale and disposition of the real estate of their testator or intestate, and its directions must be rigorously observed. His authority is limited to making an order or decree to mortgage, lease or sell so much of the real estate of the testator or intestate as shall be necessary to pay his debts. It is the real estate of the deceased which is to be leased, mortgaged or sold, and not any particular estate (such as an estate for years, for life, or in remainder) therein which he may have devised to another, that is to be sold. The act is not susceptible of execution upon any theory short of a mortgage, lease or sale of the entire estate of the testator at the time of his death. If the money needed to pay the debts "can be raised by mortgaging or leasing the real property of the deceased," the surrogate shall direct such mortgage or lease to be made for that pur-

pose. (2 *R. S.* 102, § 15.) And section 16 directs that "no such lease shall be for a longer time than until the youngest person interested in the real estate leased shall become 21 years of age." A mortgage upon an estate in remainder might possibly be the means of raising money to pay debts, but the lease of such an estate for a term of years, with a view to raise money for such an object, would certainly be a very unusual and ineffectual proceeding. The appellant relies mainly upon one of the provisions of section 20 of the act, which is, that "If it appear that any part of such real estate has been devised and not charged in such devise with the payment of debts, the surrogate shall order that the part descended to heirs be sold before that so devised, and if it appear that any lands devised or descended have been sold by the heirs or devisees, then the lands remaining in their hands unsold shall be ordered to be first sold; and in no case shall land devised expressly charged with the payment of debts be sold under any order of the surrogate." It will be observed, that in this section the words "real estate and lands" are used as synonymous terms, to designate the real property of the testator; and the sole purpose of the provision is to direct and insure the appropriation of the undevised lands of the testator, and the lands not alienated by his heirs or devisees, to the payment of the debts of the deceased, before resort can be had to any other lands of which he died seised or possessed. The term "real estate" is not defined in the act which regulates these proceedings; but in the 10th section of title 5 of chapter 1 of part 2d of the revised statutes, the terms "real estate" and "lands," as used in the chapter, shall be construed as coextensive in meaning with lands, tenements and hereditaments. And this I take to be the true signification of the term as used in the act under consideration.

Nor do I think the surrogate authorized to set apart the estimated value of the appellant's life estate from the proceeds of the sales, and apply what may remain to the payment of the debts of the deceased, before appropriating any part of

Pelletreau *v.* Smith.

such estimated value to that object; because the statute in express terms directs what shall be done with the proceeds, and the manner in which the only life estate recognized therein shall be secured. Section 32 declares that every sale and conveyance made pursuant to the provisions of the title, shall be subject to all charges by judgment, mortgage or otherwise upon the lands so sold, existing at the time of the death of the testator or intestate. Sections 36 and 37 directs that the surrogate shall in the first place pay out of the proceeds of the sales the charges and expenses thereof. He shall next satisfy any claim of dower which the widow of the testator or intestate may have upon the land sold, by the payment of a sum in gross, or by investing one third part of such proceeds for the benefit of such widow during life. He shall then, by direction of the succeeding sections, apply the residue to the payment of the debts of the deceased, distributing the residue (if any) amongst the heirs and devisees of the testator or intestate, or the persons claiming under them, in proportion to their respective rights in the premises sold. These directions are plain and explicit, and must be observed. And they are utterly inconsistent with the rule of distribution contended for by the appellant.

For these reasons I think the decree of the surrogate should be affirmed, with costs.

[KINGS GENERAL TERM, December 12, 1859. *Lott, Emott* and *Brown,* Justices.]