JEFFERSON COUNTY—HON. MILTON H. MERWIN, SURROGATE—August, 1861.

## HAVEN v. HAVEN.

*In the Matter of the Settlement of the Accounts of the Executors of* DEXTER HAVEN, *deceased.*

The testator directed that, after the payment of his debts and a certain annuity to U., all his real and personal property should go to his widow for life.   One of the debts against the estate was in the nature of a life annuity to N. H.

    *Held,* 1. That both these annuities should be paid out of the principal, and not out of the income, of the estate.

2. That after the payment of the annuities, debts of the estate, expenses of administration, and funeral expenses, the balance should be invested in permanent securities, and the net income, and rents, and profits paid to the widow.

This was an application by the executors of the last will and testament of Dexter Haven, deceased, for the final settlement of their accounts as executors, and for directions as to the payment of certain legacies, and the final disposition of the fund in their hands.

JOHN LANSING, *for the Residuary Legatees.*

J. CLARKE, *for the Widow.*

THE SURROGATE.—The will of Dexter Haven provides, 1st, for the payment of funeral expenses and debts "out of my estate;" 2d, an annuity to Nathaniel Haven, his father, of $35, "to be paid annually after my decease, during his natural life;" 3d, he gives "all my real and personal estate, goods, and chattels, of whatsoever nature or kind, to my wife, Mary Haven, to be used and enjoyed by her during her natural life." At her decease the testator makes certain specific bequests, and then bequeaths all the remainder of

his real and personal estate equally to his brothers and sisters, naming them. The will is dated February 8, 1856. On the 21st May, 1859, a codicil is made, revoking the bequest to Nathaniel Haven, and then says: "I do hereby give and bequeath unto William Usher, of the State of Missouri, the sum of thirty-five dollars a year, to be paid annually after my decease, during his natural life."

There is a debt existing against the estate in the shape of a life annuity to Nathaniel Haven, senior; and the most important question to be decided is, how shall this annuity and the annuity to Usher be paid—whether out of the annual income, or out of the principal of the estate; the widow claiming that both shall be paid out of the principal.

There is no direction in the will how these shall be paid. The deceased left personal property about $8,000, and real estate in value about $4,000. His debts, aside from the annuity, are less than $1,000. He left no descendants, and the Nathaniel Haven, senior, spoken of, is his father, and Mr. Usher is the brother of his wife.

The intention of the testator is to be gathered from the will and the surrounding circumstances. (2 Will. on Ex., 972.) The will and codicil are to be construed together, as parts of the same instrument. (Westcott v. Cady, 5 Johns. Ch., 334; Willett v. Sandford, 1 Ves., Sen., 186.) The testator directs that his debts and funeral expenses shall be first paid, then the annuity to Nathaniel Haven,—and the annuity afterwards given to Usher, is evidently in place of this; and then thirdly, that is, after the debts and annuities are paid, he gives all his estate to his widow for life. It seems to me that the design of the testator was to first provide for the debts and annuity, and what was left should be held by the widow for life; that he so meant when he said "all his real and personal estate should go to the widow," &c., and it would only more fully express the idea to say, the balance of his real and personal estate. (See Will. on Ex., 1224.) If this construction is right, then the debts, expenses, and annuity are to be provided for out of the principal, before the

amount, upon which the widow is entitled to receive interest, can be ascertained. That is to say, the capital of the estate is the amount of the assets at the date of the testator's death. From this deduct, 1st, the legal expenses of administration and funeral expenses; 2d, the debts of the estate paid, and an amount sufficient to purchase a life annuity for Nathaniel Haven, sr., to satisfy that debt of the estate to him; 3d, an amount sufficient to purchase a life annuity for William Usher, of $35, commencing at the date of the testator's death (*Craig* v. *Craig*, 3 *Barb. Ch.*, 76); 4th, the balance shall be invested in permanent securities, and the net income, after deducting taxes and expenses of investing, should be paid to the widow. The executors are responsible for this balance to the residuary legatees. (*Clark* v. *Clark*, 8 *Paige*, 152; 2 *Barb. Ch.*, 211.)