procured applications of such person or persons upon the trial, if he has not solicited or procured applications of such person or persons.

The omission of such statement in the indictment constitutes a material defect, as without it the defendant would be liable to surprise upon the trial, and might be prejudiced by such omission. This defect must be regarded matter of substance, and not merely of form, as it is the right of the defendant to be informed, not merely of the crime charged, but also of the act constituting it. People v. Dumar, 106 N. Y. 502, 13 N. E. 325; People v. Burns, supra. I am of the opinion that the indictment is fatally defective in failing to allege of whom the defendant solicited and procured applications for insurance, or, if the information as to that could not be obtained, that the name or names of the person or persons were to the grand jury unknown.

Demurrer allowed.

It being apparent that the objection upon which demurrer is allowed may be avoided in a new indictment, I direct that the case be resubmitted to another grand jury.

---

(64 Misc. Rep. 658.)

## In re STILES.

(Surrogate's Court, Saratoga County. October, 1909.)

1. INSANE PERSONS (§ 75*)—NECESSARIES—BOARD OF WIFE—HUSBAND'S LIABILITY.

An agreement by a wife during the incompetency of testator, her husband, to pay her sister for board furnished, was an agreement by the wife to pay for necessaries for which she could bind her husband's estate.

[Ed. Note.—For other cases, see Insane Persons, Cent. Dig. §§ 89, 128, 129; Dec. Dig. § 75.*]

.2. EXECUTORS AND ADMINISTRATORS (§ 206*)—CLAIMS—GRATUITOUS SERVICES.

A claim for care of testator's wife by her sister could not be sustained against testator's estate, in the absence of an agreement to pay therefor, where the circumstances indicated that the services were intended at the time to be gratuitous.

[Ed. Note.—For other cases, see Executors and Administrators, Cent. Dig. § 733; Dec. Dig. § 206.*]

3. EXECUTORS AND ADMINISTRATORS (§ 206*)—CLAIMS—CARE OF RELATIVE—RELATION BY AFFINITY.

The husband of a sister of testator's wife, being related to the wife only by affinity, would not be presumed to have intended to furnish the wife board gratuitously, and, having been paid for her board on a prior occasion, was entitled to the allowance of a claim for board, subsequently furnished, against testator's estate.

[Ed. Note.—For other cases, see Executors and Administrators, Cent. Dig. § 733; Dec. Dig. § 206.*]

4. EXECUTORS AND ADMINISTRATORS (§ 177*)—ALLOWANCE TO WIDOW—EXEMPTIONS—FUEL AND PROVISIONS.

Where testator was not possessed of fuel and provisions specified by Code Civ. Proc. § 2713, subd. 3, to be set off to the widow or minor child or children, the widow is not entitled to an allowance therefor out of his estate and money.

[Ed. Note.—For other cases, see Executors and Administrators, Cent. Dig. § 670; Dec. Dig. § 177.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

5. ·EXECUTORS AND ADMINISTRATORS (§ 178*)—ALLOWANCE TO WIDOW—FORTY DAYS' SUSTENANCE.

Where a decedent leaves real property in which his widow is entitled to dower, and she is therefore entitled to 40 days' sustenance, as provided by Real Property Law (Consol. Laws, c. 50) § 204, she may be allowed therefor, in the absence of other proof of value, at the rate paid for her board during the testator's lifetime.

[Ed. Note.—For other cases, see Executors and Administrators, Cent. Dig. §§ 667, 668; Dec. Dig. § 178.*]

6. WILLS (§ 821*)—LEGACIES—CHARGE ON LAND.

Testator bequeathed to his wife the homestead held by himself and wife as tenants by the entirety and the household furniture, most of which would have been set off to her as exempt. He then gave two pecuniary legacies out of the residue, and in the third clause his remaining cash and personal property to his widow. In the fourth clause he devised certain specific real property to his executor in trust, to pay the income to his wife for life, and at her death to distribute the proceeds to his heirs. The amount of testator's personal property when he made the will was not shown, but it appeared that less than two years thereafter, when he was adjudged a lunatic, he had enough to pay the legacies. *Held*, that an intent to charge the legacies on the specific property left in trust for his wife would not be inferred. .

[Ed. Note.—For other cases, see Wills, Dec. Dig. § 821.*]

Judicial settlement of the accounts of Jesse Stiles, as executor of the will of Loring F. Freeman, deceased. Hearing on claims. Distribution decreed.

C. S. & C. C. Lester, for executor.
Jenkins, Kellogg & Barker, for Mary Freeman McGowan.
John H. Barker, special guardian, for Hazel McGowan.
Salisbury & Rowe, for Martha Freeman and Emeline Ross.

OSTRANDER, S. This is a proceeding for the judicial settlement of the accounts of Jesse Stiles, as executor of the last will and testament of Loring F. Freeman, deceased. Upon this accounting, claims of Emeline Ross and John B. Snyder against the estate have been, by stipulation, referred for determination to the surrogate and will be first considered.

Emeline Ross claims $151—$100 for board of Mrs. Freeman from April 4, 1907, to August 27, 1907, and $51 for care of Mrs. Freeman from August 18, 1904, to September 15, 1906.

As to the claim for board: Mrs. Ross was a sister of Mrs. Freeman, the wife of testator, and it is claimed by the executor and by counsel for Mary McGowan and by the guardian for Hazel McGowan that there was no implied contract to pay board because of the near relation of the parties, and, moreover, that the circumstances shown rebutted any claim of intention to pay for such board. She came to Mrs. Ross' house from Snyder's, April 4, 1907, and remained until August 27, 1907. But she testified that she agreed to pay Mrs. Ross $5 per week for her board. Mr. Freeman was incompetent, and, as no provision was made for her board, I think it was a necessity for

which she could bind her husband. The strict language of her testimony, viz.:

"Q. What agreement, if any, was there between you and Mrs. Ross with reference to your boarding with her? I refer to the amount you were to pay her for your board. A. Agreed to pay her $5. Q. Five dollars a week? A. Yes."

—might, under some circumstances, fail to indicate any intent to charge the husband's estate; but, as Mrs. Freeman had no means of her own and was unable to do any work of any importance, I think we must infer that the board was intended to be furnished upon the credit of the husband, who had some means. From April 4, 1907, to August 18, 1907, the death of testator, was 19½ weeks, which, at $5 per week, amounts to $97.50 for which Mrs. Ross should have a recovery.

The services, upon which the remaining claim of Mrs. Ross for $51 for care of Mrs. Freeman between August 18, 1904, and September 15, 1906, is founded, were not rendered upon any express agreement to pay for them. And, if any agreement to pay could be implied, in view of the relationship of the parties, yet it is evident from the testimony of Mrs. Ross that they were rendered without any intention to charge for them. She says:

"Q. You didn't expect to render any bill? A. I didn't expect to at the time. Q. You performed those services because Mrs. Freeman was your sister? A. Because I had to. Q. Why did you have to? A. Because there wasn't any one else to do it or any one that could do it as well as I could. Q. You performed them for your sister? A. I did. Q. When she sent for you? A. Yes."

This testimony, in connection with the fact that no claim for such services was ever rendered during the lifetime of the deceased, satisfies me that the services were intended to be gratuitously performed; and this part of the claim of Mrs. Ross is disallowed.

John B. Snyder presents a claim for $41 for board of Mrs. Freeman between February 7, 1907, and April 3, 1907. Mrs. Snyder was Mrs. Freeman's sister. The claim was first presented as Mrs. Snyder's, but this was probably due to a misapprehension as to who was by law entitled to the claim. The relationship between Mr. Snyder, who in fact furnished the board, was only by affinity, and, under the doctrine of Gallaher v. Vought, 8 Hun, 87, was not of itself sufficient to repel an implication of agreement to pay for the board. There was no express contract. The question remains: Was the board furnished with intent to charge for it? The court had ordered the committee to pay Snyder for Mrs. Freeman's board up to about February 8, 1907, and the committee had done so. This seems to negative any intention to furnish her with board gratuitously; and, as there is no dispute about the value of it, the claim should be allowed.

On behalf of the widow it is claimed that no exemption has been set off to her, and that an allowance should be made to her upon this accounting for $150 under subdivision 5 of section 2713 of the Code, and for 60 days' fuel and provisions under subdivision 3 of said section. She is undoubtedly entitled to an allowance of $150 under subdivision 5, subject to a deduction of $50 which appears to have been

paid to her by the executor, and which, although not specifically applied to said allowance, appears by general consent to be applicable thereto.

As to the allowance for fuel and provisions, there were no such articles in existence at Freeman's death. It has been held in the Second Department that in such case the widow may have a money allowance in lieu of the fuel and provisions specified. Matter of Williams, 31 App. Div. 617, 52 N. Y. Supp. 700; Matter of Hembury, 37 Misc. Rep. 454, 75 N. Y. Supp. 933; Matter of Hulse, 41 Misc. Rep. 307, 84 N. Y. Supp. 220; Matter of Berns, 52 Misc. Rep. 426, 103 N. Y. Supp. 167. But the reasons for such holding are not satisfactory, and to follow this rule would work endless confusion, and the application of it would lead to as many diverse rulings, as to the relief to be granted, as different surrogates might think fit, instead of the certainty evidently intended in the statute. I concur with the reasoning of the opinions in: Matter of Libolt, 102 App. Div. 29, 92 N. Y. Supp. 175; Matter of Griffith, 49 Misc. Rep. 405, 100 N. Y. Supp. 215; Matter of Keough, 42 Misc. Rep. 387, 86 N. Y. Supp. 807; Matter of Sprague, 41 Misc. Rep. 608, 85 N. Y. Supp. 303; Matter of Perry, 38 Misc. Rep. 167, 77 N. Y. Supp. 271; Matter of Campbell, 48 Misc. Rep. 278, 96 N. Y. Supp. 768; Matter of Baird, 126 App. Div. 439, 110 N. Y. Supp. 708. And I do not think the surrogate has any jurisdiction to make a money allowance in place of fuel and provisions which were not owned by the testator at the time of his decease. But the decedent left realty in which the widow had a dower right, and she seems to be entitled to 40 days' sustenance under the provisions of section 204 of the Real Property Law (Consol. Laws, c. 50).

From the testimony in the case it seems that she had been receiving board and care, before his death, for $5 per week, and, while there is no other specific evidence as to the value of her sustenance, I think that sum would not be an unreasonable allowance, and I therefore allow the widow for such sustenance $30.

The will bears date October 16, 1903, and Freeman died August 18, 1907. The house in which he resided at Gansevoort was held by a deed standing in the joint names of himself and his wife and is conceded to have been an estate by the entirety which went by operation of law to his widow, or his descendants, although it is attempted to be devised by the first clause of his will. After making the will he became incompetent, and a committee of his person and estate was appointed. At the time of his death his committee had a balance of cash in his hands amounting to $266.48, which has come to the executor, and the executor has also received the proceeds of certain old iron which was sold for $5.40.

The deceased also held title to a house and lot on Geyser avenue, in or near the village of Saratoga Springs, which had been leased in 1901 to one Tolmie; and in April, 1903, there had been a further lease of said property to said Tolmie. The lease reserved rent at $48 per month prior to May 1, 1907, and $50 per month thereafter. There is no testimony which shows how much, if any, rent was due at Freeman's death; but payments of rent were made to the executor by

Tolmie to the amount of $295, down to the 4th day of November, 1907. At that time, by the terms of the lease, only $150 had fallen due since the death of Freeman. There is no claim that any advance payments of rent had been made by Tolmie, and I think that, in the absence of further evidence, the presumption must be that the amount thus overpaid was for application for rent accrued at the death of Freeman, thus making personalty of that part of the rent accrued at Freeman's death, namely, $145, and making the whole personalty which has come to the executor's hands as above stated $416.88.

The executor collected of rent upon the Geyser avenue property down to the time of the filing of the account $400, and has since collected $25. Deducting from this the sum of $145, which I have concluded accrued prior to Freeman's death, leaves a balance of $280.

At the time of Freeman's death, the Geyser avenue property was subject to a mortgage for $1,500 and interest thereon at 6 per cent. from March 1, 1907. The executor paid interest on this mortgage: August 28, 1907, $45; March 2, 1908, $45. Before the next installment of interest fell due, the house on the property burned. On June 17, 1908, the executor received for insurance $2,200, and, on the same day, he paid the mortgage and balance of accrued interest, $1,533.25. He has also paid for taxes upon the property: $4 on January 21, 1908; $28.01 on February 2, 1908.

The questions raised as to the disposition to be made of the funds and real estate remaining lead to the construction of the second clause of the will and require a determination as to whether the legacies to Mary Freeman McGowan and Hazel McGowan, made in said second clause, are charged upon the Geyser avenue property, being the only real estate of the testator.

By the first clause of his will, Freeman directed payment of his debts and gave his residence in Gansevoort, with the household furniture therein, to his wife. This residence was held by Freeman and his wife as an estate by the entirety, and his will had no operation upon it; the property passing by operation of law to the widow. The property contained in it was of little value; and it would, no doubt, all or mostly, have passed to the widow as exemptions under the Code in addition to what has been herein allowed her.

The second clause of the will reads:

"Second. Out of the rest, residue and remainder of my property, I give to be next paid five hundred dollars ($500.00) to each Mary Freeman McGowan, wife of Andrew McGowan, and five hundred dollars ($500.00) to Hazel McGowan, daughter of the said Andrew McGowan and Mary McGowan."

The third and fourth clauses are in the following language:

"Third. Should there be any cash or other personal property belonging to me, which is not heretofore disposed of after paying all debts, remain in bank or otherwise, I give the said cash and personal property to my wife above named.

"Fourth. I give my property known as the Geyser avenue property, now occupied by John Tolmie, to my executor hereinafter named in trust for the following uses and purposes, viz.: (a) To pay the net income thereof to my wife, Martha Ellison Freeman, during her natural life. (b) Upon the death of my said wife, I direct my executor hereinafter named, to as soon as practicable and for the best interests of my estate, to convert all property remain-

ing in his hands into cash and distribute the same among my lawful heirs the same as if I had died intestate."

It is a well-settled rule of law that legacies of money are to be paid from personal property, and, if the personal estate is insufficient therefor, the legacies abate unless the real estate is charged with their payment. It is equally well settled that whether a legacy is charged on the real estate devised in a will is a question of intention upon the part of the testator. That intention may be ascertained, either by express words in the will, or by such a conclusion flowing from all the provisions of the will. And it has been held that extraneous circumstances may be considered in aid of the terms of the will. Hoyt v. Hoyt, 85 N. Y. 142. The court is not to make a will for the testator, but to ascertain, from all the provisions and extraneous circumstances in aid thereof, what the testator intended—not what the court may conceive he should have done under the circumstances, but what he did, in fact, intend to do.

There is no language in this will expressly charging the McGowan legacies upon the realty, and there would be no difficulty in construing it, were it not for the following language used in the second clause, "out of the rest, residue and remainder of my property I give to be next paid," etc., the money legacies to the McGowans. It is claimed that these words indicate an intention to create all the testator's property remaining after satisfying the first clause a fund for the payment of the McGowan legacies. Putting ourselves in the testator's place at the making of the will: The Geyser avenue property was rented for $48 per month and was subject to an interest charge of about $7.50 per month, besides the taxes, insurance, and repairs. The testimony does not disclose how much personalty he had at the time of making his will, in October, 1903; but early in the year 1905, when his committee made inventory of his estate, he had $1,014.46 in bank. It does not appear that he had any debts at that time. Freeman and his wife were, so far as appears, living happily together and had no children. She had no income-bearing property, and no reason is disclosed why he would be likely to desire to leave her unprovided for. By the third clause of the will he gives all his cash and other personal property not previously disposed of to his wife. This would seem to indicate some intention that the legacies before mentioned were to be paid out of the personal estate. It is not very clear or convincing, standing by itself; but it may have significance in connection with the other facts in the case.

The fourth clause is absolute in its terms, devising the Geyser avenue property. It is not made in terms subject to any other part of the will, is not in terms a devise of any residuum, but is on its face an absolute devise of specific property, in trust, to pay the income for life to his wife and later to convert it into cash and distribute to his heirs. The effect of the whole instrument, if the intent was not to charge the realty with the McGowan legacies, was to leave the widow with an income, about sufficient, in connection with the residence, to give her a modest support. But if the intent was to charge the McGowan lega-

cies on the realty, then the effect would be to leave the widow, possibly, without any income.

While the matter is not entirely free from doubt, I think the testator deemed his personalty sufficient to pay the McGowan legacies, and intended to preserve the Geyser avenue property as a means of support for his wife, and did not intend to charge it with payment of the legacies. The insurance moneys, received for fire losses on the Geyser avenue property, stand in place of the realty destroyed and are to be treated as so much realty in the hands of the trustee as principal of the trust fund, but subject to such demands for payment of debts and funeral expenses, if any, as may be just. Under section 250 of the real property law, it is the duty of the devisee—that is, the trustee—to pay the mortgage debt. As between the beneficiaries under the trust, the life beneficiary, the widow, should pay the interest accruing subsequently to Freeman's death, and the remaindermen the principal and interest accrued upon the mortgage up to Freeman's death. The life beneficiary should pay the taxes. Cromwell v. Kirk, 1 Dem. Sur. 599. The rents received, accruing since Freeman's death, amounting to $280, belong to the trustee as income, for the benefit of the widow and not for the remaindermen, and do not constitute a fund for payment of debts and funeral expenses. Pellettreau v. Smith, 30 Barb. 494; Matter of Franklin, 26 Misc. Rep. 107, 56 N. Y. Supp. 858; Kohler v. Knapp, 1 Bradf. Sur. 241; Haven v. Haven, 1 Redf. Sur. 374.

Distribution should be made in accordance with the foregoing views, along the following lines:

From the $416.88 personalty received by the executor should be first paid the widow's exemptions and quarantine, $180. From the balance remaining, the administration expenses should be paid. From the balance remaining, together with the insurance moneys received, less the mortgage debt and accrued interest thereon up to Freeman's death ($1,542), should be paid the debts and funeral expenses, executor's commissions, and the expenses of this accounting; and the balance should be turned over to the trustee as principal of the trust fund. The rents accruing since the death of Freeman ($280) should pay the interest accruing upon the mortgage after Freeman's death, the taxes, and the trustee's commissions upon those rents, and the balance should be paid to the widow.

Decreed accordingly.