In the Matter of the Estate of MARY H. B. KEELING, Deceased.

Surrogate's Court, Kings County, September 6, 1933.

*Cullen & Dykman* [*Ralph W. Crowley* of counsel], for the administrator.

*Thomas L. Driscoll,* for the objecting creditor.

WINGATE, S.  The questions herein presented for determination arise upon a motion to dismiss the claim of an alleged creditor against this estate.  Upon primary principles of practice, it results that the matter is to be viewed as upon a demurrer, and that all facts alleged and established, and inferences reasonably deducible therefrom, are to be taken as true.  (*Matter of Kirkman,* 143 Misc. 342, 343; *Matter of Duggan,* 146 id. 596, 597; *Matter of Killough,* 148 id. 73, 74.)

The facts as thus determined for the purposes of this motion demonstrate that the present intestate, who died on July 31, 1931, had been adjudicated an incompetent on November 25, 1924, and committees of her person and property duly appointed. An allowance of $400 per month was authorized to the committee of her person for her " support and maintenance." In addition to this seven special orders were made from time to time authorizing the payment of various sums for medical services rendered to the incompetent by a physician by the name of McCoy. The first of these orders was dated June 16, 1925, and the last September 7, 1928. The total of the sums so allowed to Dr. McCoy for the period terminating on August 29, 1928, aggregated $2,475.55.

Upon the hearing on the settlement of the accounts of the committee, following the death of the incompetent, the committee of her person testified to conversations with her in, and subsequent to, September, 1928, in which she stated her dissatisfaction with Dr. McCoy and that she had discontinued treatment by him and was now being attended by the present claimant, Dr. Love, who had helped her. He further testified to conversations with Dr. Love in respect to payments for the services rendered by him, to the effect that whereas he, the committee, had been able to obtain orders from the Supreme Court approving Dr. McCoy's bills, he did not feel justified in making further application in this regard on behalf of Dr. Love. He, however, expressed to Dr. Love his conviction that the incompetent's estate was sufficient to pay the bills of the latter and that he thought they would probably be paid subsequent to the death of the incompetent. Accordingly, Dr. Love withheld the pressing of his claims until after the death of the incompetent and thereupon presented a bill for $1,880 for services rendered up to the time of her decease. This bill was rejected by the committee, and Dr. Love was cited upon the settlement of the accounts of the committee and duly appeared before the referee in that proceeding and offered testimony both by himself and others in respect to his claim. The claim was wholly rejected by the referee in that proceeding, and the Supreme Court, in confirming the report of the latter, made an order under date of June 8, 1932, reading in part as follows: "And it appearing that the claim of Dr. Cornelius Love was referred for hearing to George H. Holahan, Jr., as referee, and the claimant having appeared and offered proof in support of his claim;'and said referee having found that said claim was not a proper claim against said committee, it is further

" Ordered, adjudged and decreed that the report of said George R. Holahan, Jr., be and the same hereby is confirmed; and that the

claim of said Dr. Cornelius Love be and the same hereby is disallowed."

The claimant thereafter duly filed his claim with the administrator of the incompetent's estate. It was rejected and now arises upon the judicial settlement of the accounts of the administrator.

The preliminary contention of the administrator is to the effect that the matter was adjudicated adversely to the claimant upon the hearing in respect to the accounts of the committee and can, therefore, not be raised at the present time. This contention is wholly without merit. The factual demonstrations required to establish a defense of *res adjudicata* are fully elaborated in the leading case of *Rudd* v. *Cornell* (171 N. Y. 114, see particularly pp. 127 to 128). Two of the chief requirements in this regard are that the determination shall have been had in a litigation between the same parties constituting the litigants in the subsequent action, and that the prior adjudication shall have been on the merits. The first of these prerequisites is not met in this case, since the claim before the referee was one presented against the committee of the incompetent who is obviously a different person both actually and legally from the present administrator. Compliance with the second is also not demonstrated, since the recital in the order of the Supreme Court respecting the determination of the referee was that " said claim was not a proper claim *against said committee.*" This is far from a determination that it is not a just and proper claim against the estate of the incompetent.

In view of the provisions of section 1383 of the Civil Practice Act, it seems apparent that the determination of the referee, subsequently confirmed by the court, was in all respects correct. This section reads in part: " Where a person, of whose property a committee has been appointed, as prescribed in this article, dies during his incompetency, the power of the committee ceases; and the property of the decedent must be administered and disposed of as if a committee had not been appointed." In view of this enactment it seems obvious that any liability of the decedent, as distinguished from a liability incurred by the committee, should properly be met by the executor or administrator of the estate of the incompetent and not by the committee, and such appears to be the approved practice. (*Matter of Beckwith,* 87 N. Y. 503, 508.) (See, also, *Carter* v. *Beckwith,* 128 id. 312, 322.) The functions of the committee as bailiff of the estate of the incompetent (*People ex rel. Smith* v. *Commissioners of Taxes,* 100 N. Y. 215, 218; *Matter of Rasmussen,* 147 Misc. 564, 566) terminated on the death, and the only matters which are properly to be considered

upon a passing of his accounts in the court of his appointment are those respecting which he performed some affirmative act.

The defense of *res adjudicata* must, therefore, be overruled.

The second point of law argued by the moving party relates to the authority of the committee of the person to employ the claimant and render the estate of the incompetent liable for his services in the absence of any authorization from the court of his appointment. In the opinion of this court this contention wholly misses the essential point at issue. There is no claim on the part of any one that the committee employed Dr. Love. Indeed, the entire showing is to the contrary. The incompetent herself consulted him of her own volition and, according to the testimony of the committee before the referee, stated that she had done so by reason of her dissatisfaction with the services rendered by Dr. McCoy. The testimony of the committee expressly negatives any thought of his interposition in respect to the rendition of such services. It is, however, primary that the estate of any person who is *non sui juris* is liable for necessaries furnished to him. The few New York cases in which the matter has been raised (*Matter of Stiles*, 64 Misc. 658, 661; *Matter of Shaper*, 5 Thomp. & C. 693) treat the principle as fundamental and granted. There are, however, many decisions in the courts of other jurisdictions emphasizing the fundamental principle involved. Thus, in *Matter of Freshour* (174 Mich. 114) the court says (at p. 120): " It is an old and well-established rule of law that, when necessaries have been furnished to a person, it matters not whether the recipient is mentally competent or otherwise. If there is no express agreement to pay for the necessaries, an implied agreement arises." The reason for this rule is made to appear in *Sawyer* v. *Lufkin* (56 Me. 308), in which the court points out (at p. 309): " If necessaries are furnished a person in this condition, in good faith and under circumstances justifying their being so furnished, the person furnishing may recover. If the law were not so, the insane might perish, if a guardian, having means, should neglect or refuse to furnish the supplies needed for their support. They stand in the same position as minors and are liable for necessaries." *Hartley* v. *Hartley's Estate* (173 Mo. App. 18) contributes the following (at p. 24): " Obviously one may not enter into an actual contract unless he is *compos mentis* at the time, for to do so there must be an *aggregatio mentium*, which implies a sound mind; but there are cases in which the law, by construction, supplies a contract by implication, in accord with the precepts of natural justice, and among such contracts so implied as a matter of law is one on the part of an insane

person to compensate the reasonable value for actual necessaries furnished him while insane."

Decisions to substantially identical effect may be found in *Reando* v. *Misplay* (90 Mo. 251, 257); *Borum* v. *Bell* (132 Ala. 85, 88); *McKone* v. *McConkey* (77 Okla. 3, 4); *Ratliff* v. *Baltzer's Administrator* (13 Ida. 152, 160); *Matter of Ganey* (93 N. J. Eq. 389, 393; affd., 94 id. 502); *Matter of Doyle* (126 Cal. App. 646); *Jones* v. *Meyer* ([Tex. Civ. App.] 248 S. W. 777, 779); *Smith's Committee* v. *Forsythe* (28 Ky. Law Rep. 1034, 1036); *Rautenkranz* v. *Plummer* (75 Ind. App. 269, 272).

In *Coffee* v. *Owen's Administrator* (216 Ky. 142) the court (at p. 143) cites and applies the rules stated in 39 C. J. 739 to 740: " Generally, when necessaries are furnished to a person who by reason of mental incapacity cannot himself make a contract, the law implies an obligation on the part of such person to pay for such necessaries out of his own property; his liability for necessaries is deemed rather a benefit than a disadvantage to him."

Finally, the Supreme Court of Massachusetts, in *Belluci* v. *Foss* (244 Mass. 401) contributes the following (at p. 402): "A person over whom a conservator has been appointed may be liable for necessaries furnished him, as an insane person or an infant. If liable, he is bound on an implied contract. Whether the articles sued for are necessaries is generally a question of fact, depending not merely on mere nature but upon the issue whether they are proper and suitable, according to the circumstances and his condition of life. Where suitable provision is made by a guardian for the support of his ward, ' or where, from any source * * * [his] wants * * * are supplied, articles furnished by a trader to * * * [the ward] on his own credit, are not necessaries, and of this the trader must take notice and inform himself. *Davis* v. *Caldwell*, 12 Cush. 512, 513.' "

If, as is apparent from the facts stipulated and the inferences deducible therefrom, the claimant herein rendered medical services to the incompetent, her estate is *prima facie* liable therefor on a *quantum meruit* basis. The necessity for medical services would seem to be inferentially demonstrated by the fact that for the period from November 25, 1924, to August 29, 1928, the court authorized payments to Dr. McCoy for this purpose of the total sum of $2,475.55 over and above the amounts allowed the committee of the person for the ordinary support and maintenance of the incompetent. The services for which claimant seeks payment in the sum of $1,880 covered a period of substantially equal duration. It does not appear that the incompetent was, during this latter period, furnished with medical services by the committee of her

person and a presumption of need therefor would arise by reason of the previous showing. (*Matter of Rooney* v. *Weiner*, 147 Misc. 48, 49; *Matter of Auditore*, 136 id. 664, 672; affd., 233 App. Div. 740.)

The motion to dismiss the claim is, therefore, denied. The matter may be brought on for hearing on the merits in the usual course, upon due notice.

Proceed accordingly.