[No. 11771. In Bank. — January 29, 1887.]

# THE PEOPLE EX REL. FRANK M. CLOUGH, AP-
PELLANT, *v.* WALTER H. LEVY, RESPONDENT.

FINDING — CONFLICT OF EVIDENCE. — Where the evidence is substantially conflicting, a finding will not be disturbed on the ground that it is contrary to the evidence.

ID. — RESIGNATION OF OFFICER — FINDING AS TO SANITY — EVIDENCE. — A finding that at the time the relator resigned the office in question he was of sound mind, and that his resignation was not procured through fraud, or upon an offer by the respondent to share with him the salary attached to the office, *held*, supported by the evidence.

ID. — CROSS-EXAMINATION — IMPEACHMENT — CONTRADICTORY STATEMENTS. — The cross-examination of a witness as to statements made by her inconsistent with her examination in chief, without having first laid the proper foundation for impeachment as required by section 2052 of the Code of Civil Procedure, is not error when no attempt is afterwards made to contradict the witness.

ID. — WITNESS AS TO MENTAL CONDITION — INTIMATE ACQUAINTANCE — QUESTION FOR COURT — DISCRETION. — The question whether a non-expert witness called to testify as to the mental condition of a particular person is sufficiently acquainted with such person to entitle his evidence to be received, is within the discretion of the trial court to determine, and its action thereon will not be reviewed on appeal when no abuse of discretion appears.

APPEAL from a judgment of the Superior Court of the city and county of San Francisco, and from an order refusing a new trial.

The facts are stated in the opinion of the court.

*Attorney-General Marshall,* and *Langhorne & Miller,* for Appellant.

*C. L. Ackerman,* and *David McClure,* for Respondent.

PATERSON, J. — This is an action in the nature of *quo warranto* to oust the defendant from the office of judge of the Superior Court in and for the city and county of San Francisco, into which it is alleged he has intruded, and to reinstate the relator therein.

The relator was elected to said office for the term of

six years from and after the first Monday of January,
1883. After his election, he duly qualified as such judge,
took possession of and held the office until the twenty-
eighth day of August, 1885. On the eleventh day of
August, 1885, the relator signed and delivered to one
McCourtney, his court-room clerk, and instructed him
to deliver to the governor, the following paper:—

"To HIS EXCELLENCY, GEORGE STONEMAN, GOVERNOR OF
    CALIFORNIA.

"*Dear Sir,*— I herewith tender you my resignation as
Superior Judge of the city and county of San Francisco,
state of California. Failing health will no longer permit
me to perform the duties thereof.

"Respectfully yours,

"F. M. CLOUGH, Judge."

McCourtney handed the document to Mrs. Clough, who
thereafter delivered the same to T. J. Clunie, by whom it
was delivered to Governor Stoneman on or about the 28th
of August, 1885. Appellant claims that at the time said
resignation was signed, and thereafter until it was deliv-
ered to the governor, the relator Clough was insane, and
that his acts in relation to said resignation are void; and
this is the principal ground of contention on this appeal.

The cause was tried before the Superior Court sitting
without a jury, and the court found as facts:—

"14. That said relator was, on the said eleventh day
of August, 1885, and at the time of making and deliver-
ing the said resignation, in a fit and proper condition
for the proper transaction and understanding of busi-
ness, and he was at the said time of sound mind and
memory."

"20. That at the time of signing said resignation,
said relator well knew the purport and effect of the
same, and did voluntarily sign said resignation."

"22. That said relator was at the time of the delivery
aforesaid of sound mind, and well able to understand the
effect of his said act of delivery."

It is claimed, however, by appellant that said findings
are not supported by the evidence. Mr. McCourtney,

It is claimed, however, by appellant that said findings are not supported by the evidence. Mr. McCourtney, the relator's court-room clerk, testified as follows:—

"I did not notice anything wrong with him. He talked the same that day [August 11th] as he did in his court-room. I have observed the conduct of Judge Clough in his court-room during the time that I have been there, and have known him for three or four years. He talked the same that day as he did in his court-room. I did not see any difference. He signed the state demands also, besides the city warrants. I am very familiar with his handwriting and his signature. I can see no difference in the signature on the warrants here shown and the signatures in the court-room. He signed the word 'Judge' at the bottom. I did not ask him to sign it. He put it there of his own volition. He said: 'Now I have resigned, forward that to the governor of the state.' He asked if he would get this month's salary, and I said, 'Certainly you will get that.'"

W. Fitzgerald, who had known the relator for about three years, testified that he saw him the next day after he came down from Stockton on August 8th. "I remained with him after that about six or seven weeks. I had mostly charge of him. I spent nearly all the time, except when I would run down town during the daytime, with him all those weeks. I should think most of the time, to the best of my opinion, he was sane all the time I was with him. He was sane, and not out of his mind except when he got excited. His mental condition was good. I could not see any change. . . . . He seemed to talk very rationally. I was there when the resignation was signed. He had a conversation after with McCourtney. He signed it right off. I don't know whether he read it. I should say he was understanding what he was doing."

Dr. Buckley, an expert witness, testified in answer

to hypothetical questions: " I should consider a person who signed a document, after all this reasoning *pro* and *con* relative to the subject, was perfectly sane in mind."

This evidence shows that, whatever may be the weight of the evidence against it, there is a substantial conflict as to the sanity of the relator at the time he executed the resignation and delivered it to McCourtney, on the eleventh day of August, 1885.

The most serious question, it is claimed, in the case, is as to the condition of his mind from the eleventh day of August to and including the 28th, or until the appointment of the respondent to fill the vacancy.

Although it might seem to us that the finding of the court is contrary to the weight of testimony, it is sufficient to say that there was evidence enough to cause a substantial conflict therein. It is true, there is no direct evidence as to his sanity during each and every day of the period referred to, but there is testimony indicating sanity during a portion of the time, and from which the court was justified in finding him to be sane during the whole period. Judge Maguire, an intimate friend and associate of the relator, testified that he visited him on several occasions. He says: " I think it must have been between the 15th and 25th of August that I saw him, but I cannot place closely the first visit I made. I met judges Lawler and Rearden there. Judge Clough then and there conversed with me and the other judges. He said that he desired to speak about his alleged resignation and the appointment of Levy. We asked him about it, talked about it, and he made some statements concerning it. . . . . He seemed to me to be weak physically, and not very strong mentally, but still so rational as to surprise me from his former condition and conversation. I should say that he had very greatly improved at that time; improved so far as to seem to be rational if not disturbed. . . . . During that time he seemed to be quite rational and quite

sane, barring the weakness that was incident to sickness of that character. I would regard him to be of sane mind. I would consider that he talked quite rationally upon all other subjects that were discussed at that time, barring the weakness and the nervous excitement at times, which he checked, as I say."

McCourtney testified: "I went there again for the purpose of getting his warrant signed. It was in the latter part of August or the first part of the next month. He came and greeted me and shook hands with me. It was about the time that Judge Levy was appointed. I think it was before Judge Levy took his seat. He came in and shook hands with me, and I told him, I said: 'Well, Judge, I have brought you out your demand; I suppose it is the last you will get.' He said: 'Yes; I don't know whether I have any right to sign it or not.' I did not stay over five or six minutes. He acted just as he always did in court."

Mrs. Clough testified: "So, then, August 28th I telegraphed the governor, and told him that the judge was much better, and he had not resigned. . . . .

"He commenced to recover, I think, about a week or ten days after he came from Stockton, August 7th.

"He was better that week than he had ever been,—the week that he went up there in September,—and I thought probably he was well enough to get his discharge; but the ride up and down upset him, and after that he commenced being nervous again. . . . .

"Dr. Hayne said he was well enough to go and get his discharge, and he was seemingly very well. I did not see anything out of the way. He talked rationally and intelligently. This was about the middle of September. After that he was not violent."

This testimony, which is all there is bearing on the point, in connection with his acts in relaion to the demands and warrants for salary, created, in our opinion, a substantial conflict in the evidence.

Appellant claims that the resignation was procured through fraud, and upon the respondent's offer to share with the relator or his family a part of the salary of the office in the event of the respondent's appointment thereto, and therefore that the resignation was void, being against public policy. But the court found that no such offer was made, and that there was no fraud in procuring the resignation. Upon this question there was also a conflict of testimony, and the same is true of all the findings about which there is any controversy.

The hypothesis upon which defendant's counsel based his question calling for the opinion of Dr. Buckley was warranted by the evidence, and we cannot say that the facts stated were insufficient to render it competent.

During the cross-examination of Mrs. Clough, she was asked whether she had stated to the attorney-general that the judge was much better.

To this question counsel for plaintiff objected, on the ground that the proper foundation had not been laid for impeachment as required by section 2652 of the Code of Civil Procedure. The objection was overruled, and plaintiff excepted.

Inasmuch as no attempt was made to contradict the witness, there was no error in the ruling.

It is claimed that the witness, McCourtney, ought not to have been allowed to testify concerning the sanity of relator, because he was not shown to be an "intimate acquaintance," within the meaning of the statute. It is often a difficult question to determine whether the witness is sufficiently acquainted with the party to entitle him to speak. That the witness should be familiar with the temperament and habits of mind of the person whose soundness is in question there is no doubt, but the determination of the competency of the witness is within the discretion of the court below, — with the exercise of which, there being no abuse, this court will not interfere. (*People* v. *Pico*, 62 Cal. 53.)

Other errors are assigned, but we see nothing preju-dicial in any of them.

Judgment and order are affirmed.

SHARPSTEIN, J., MORRISON, C. J., and McFARLAND, J., concurred.

McKINSTRY, J., concurred in the judgment.

Rehearing denied.