519 F.2d 754
 Josefina A. ROBERTO, an incompetent person, by Concepcion R.
Padula, her next friend, Plaintiff-Appellant.
v.
Francisco B. AGUON, Administrator of the Estate of Vicente
L. Aguon, Deceased, et al., Defendants-Appellees,
Turtle Cove, Inc., Intervenor-Appellee.
 No. 74-2039.
 United States Court of Appeals,
Ninth Circuit.
 July 8, 1975.
 
 Robert A. Seligson (argued), San Francisco, Cal., for plaintiff-appellant.
 Fred E. Bordallo (argued), Agana, Guam, Eugene H. Bramhall (argued), Oakland, Cal., for defendants-appellees.
 OPINION
 Before BARNES, KILKENNY and GOODWIN, Circuit Judges.
 BARNES, Senior Circuit Judge:
 
 
 1
 This is an appeal from an adverse decision in an action filed September 10, 1972 by the "next friend" of an alleged incompetent, Josefina A. Roberto, to set aside a deed made and delivered by said Josefina on June 10, 1963. The order of the trial court dismissing the action was entered at the close of plaintiff's testimony. (Fed.R.Civ.Proc. 41(b)).
 
 
 2
 The trial judge filed a 29 page opinion, which was designated as constituting "the Court's findings of fact and conclusions of law," required by Fed.R.Civ.Proc. Rule 52(a). Appellant concedes that the court, which devoted 20 pages of its opinion to reviewing and evaluating the evidence, went "into great detail with respect to the evidence which was presented to the trial court." (Op. Brief, p. 3). We agree. The court concluded that "plaintiff . . . failed to prove by a proponderance of the evidence that the deed executed by plaintiff was void." (C.T. 299).
 
 
 3
 Plaintiff-appellant urges three errors: (a) that "no evidence" was received to contradict substantial evidence of plaintiff's incompetency; (b) that the court failed to make findings on a material issue, i. e. whether plaintiff was incompetent under Guam Civil Code 39 which would make the deed voidable. The court only made findings on Guam Civil Code 38, finding the deed was not void thereunder; (c) the District Court erred in excluding the opinions of intimate acquaintances respecting plaintiff's mental competency at the time she executed the deed.
 
 
 4
 We find no error, and affirm.
 
 
 5
 * We first consider the second assignment of error raised, the lack of findings on Guam Civil Code Section 39, which lack is undisputed.
 
 
 6
 The Guam Civil Code, part of the Territorial Laws adopted in December, 1933, precisely follows the California Civil Code in Sections 38 and 39. Appellate courts have consistently recognized that decisions of California courts which predate the enactment of the Territorial Laws are controlling authority on issues of the statutory construction and effect of Guam laws,[1] and that California cases subsequent to the adoption of the Guam codes while not binding, are persuasive.[2]
 
 
 7
 Civil Code Section 38 (with exceptions not here relevant) states: "A person entirely without understanding has no power to make a contract of any kind, . . ." Civil Code Section 39 states: "A conveyance or other contract of a person of unsound mind, but not entirely without understanding, made before his incapacity has been judicially determined, is subject to rescission . . .."[3] See Smalley v. Baker, 262 Cal.App.2d 824, 834, 69 Cal.Rptr. 521 (1968).
 
 
 8
 Appellants now assert that the "lesser incompetency" of Civil Code Section 39 was a material issue requiring a finding by the trier of fact.
 
 
 9
 We think not.
 
 
 10
 (1) It is elemental law that findings are not required on every aspect of each case. Findings are only required on material issues. This was an action to quiet title, and neither Civil Code Sections 38 or 39 were mentioned in the complaint.
 
 
 11
 (2) In plaintiff-appellant's statement of what evidence she proposed to introduce, she stated ". . . that plaintiffs[4] have always been mentally incompetent, insane, of unsound mind, and entirely without the capacity to understand or comprehend ordinary business transactions such as conveyances and contracts and the like. . . ." (C.T. 145-146) (Emphasis added.)
 
 
 12
 (3) In plaintiff-appellant's Trial Memorandum of Points and Authorities, the only authority cited was Section 38 and one California case, Jacks v. Estee, 139 Cal. 507, 73 P. 247 (1903), relating only to said Section 38.
 
 
 13
 (4) On November 2, 1973, a pretrial order was filed, providing that "the complaint be amended to include a cause of action for the concellation of the written instruments described in the other parties' pleading." (C.T. 198-99).
 
 
 14
 Nowhere in that pretrial order (C.T. 198-99) does a reference to Section 39 appear (although some language might be interpreted to raise an inference that Section 39 was involved).
 
 
 15
 (5) While appellees refer in their brief to "an unreported conference in chambers with the trial judge (where) counsel for plaintiff elected to proceed exclusively on Section 38," plaintiff-appellant, while not denying that such an unreported conference took place, very properly objects to any reference to "off the record proceedings," and hence we do not consider it or them.
 
 
 16
 (6) Appellees correctly quote the record to indicate the case was tried on the theory that plaintiff was a person "entirely without understanding" a Section 38 requirement.[5]
 
 
 17
 (7) The only expert testimony was Dr. Blinder's opinion. He stated in summary that now and at all times within her lifetime since the onset of schizophrenia in grade school plaintiff was not capable at any time under any circumstances of understanding the nature and consequences of acts that had to do with the transferring of property.
 
 
 18
 (8) The court concluded from the manner in which the case was tried that the basic issue was a Section 38 question.[6]
 
 
 19
 We conclude there was sufficient evidence to demonstrate an abandonment of the Section 39 claim. No attempt was made to plead or prove the essentials to a Section 39 recovery: e. g., no request for rescission was made; no mention of tender; no offer to restore.
 
 
 20
 We agree with appellees that neither the rules nor case law require the District Court to make findings on issues not tried in the court below.
 
 
 21
 We conclude there is no merit in appellant's second claimed error.
 
 II
 
 22
 We turn to appellant's first alleged error that "no evidence" was received to contradict evidence of Mrs. Roberto's incompetency.
 
 
 23
 The difficulty with this argument is that it ignores the fact that plaintiff bears the burden of persuasion on this issue, and it characterizes the cross-examination of all lay witnesses and the one expert witness produced by plaintiff, as well as the six written defendants' exhibits, as totally without evidentiary value.
 
 
 24
 It would be of little value to this opinion to cite in detail the errors and inconsistencies in Dr. Martin Blinder's testimony. They have been outlined in part by the trial judge, and also by opposing counsel. (Appellee's Reply Brief, pages 33-37). We have read the entire record, and we must say that Dr. Blinder (an attorney as well as a psychiatrist), was somewhat careless in certain of his statements as a witness. He was not a Board certified psychiatrist (R.T. 80). He described himself as "a high powered San Francisco shrink." (R.T. 79). He had examined the plaintiff-appellant twice on April 10, 1973, and on December 2, 1973, one day before trial. He reported to plaintiff's lawyer, for example, and stated on direct examination, that the plaintiff had had "many psychiatric hospitalizations at the Guam Memorial Hospital from 1959 to about 1968." One of these hospitalizations in Guam turned out to be related to a "high fever," and another to a cesarean operation. He admitted he was wrong in his original statement. He testified on direct examination that plaintiff had "several lengthy psychiatric commitments confirmed by me." He admitted this was a mistake on his part (R.T. 52).
 
 
 25
 On cross-examination, he admitted one nine day Orange County, California commitment did not qualify as a "lengthy" stay, that his statement was in error (R.T. 52). Her next commitment in Orange County, California, was from December 21, 1971 to January 7, 1972, which was not, in his opinion "a lengthy psychiatric commitment."
 
 
 26
 Describing plaintiff as "a chronic schizophrenic" (based upon his reconstructed or retrospective analysis), Dr. Blinder also testified on cross-examination that one who is a chronic schizophrenic may, under certain circumstances, be competent to execute documents (R.T. 83), and that plaintiff's condition "doesn't necessarily . . . mean she was not competent to execute certain kinds of documents." (R.T. 83).
 
 
 27
 There were at least nine matters that could have properly influenced the trier of fact in determining the credibility of Dr. Blinder in this case under existing California and federal law:
 
 
 28
 1. His demeanor while testifying.
 
 
 29
 2. The character of his testimony.
 
 
 30
 3. The extent of his capacity to perceive, to recollect, or to communicate any matter about which he testifies.
 
 
 31
 4. The extent of his opportunity to perceive any matter about which he testifies.
 
 
 32
 5. The existence or nonexistence of a bias, interest, or other motive.
 
 
 33
 6. A statement made by him that is inconsistent with any part of his testimony at the hearing.
 
 
 34
 7. The existence or nonexistence of any fact testified to by him.
 
 
 35
 8. His admission of inaccuracies and error in earlier testimony. See cases cited in Young Ah Chor v. Dulles, 270 F.2d 338, 341 (9th Cir. 1959); Section 780 California Evidence Code; 7 Wigmore, Section 2034, n. 3 (3rd ed. 1940).
 
 
 36
 From all this, the trier of fact gave a summary of Dr. Blinder's testimony; named the lay persons the doctor had spoken to (as to their opinions); referred to the admitted errors and inconsistencies in his testimony; mentioned the fact that when the expert made his report he had no knowledge of the various documents plaintiff had executed in 1963, 1965 and 1967; stated that the doctor's testimony established he had relied "primarily on other people's so-called knowledge of plaintiff's background to ascertain plaintiff's mental condition in the past and more specifically her mental status in 1963." (R.T. 293).
 
 
 37
 The court then evaluated the testimony. He declined to believe that either the lay or expert testimony established a preponderance of evidence favoring the plaintiff, on whom the burden of proof lies in this type of proceeding. (Guam Code of Civil Procedure, § 2061)
 
 
 38
 The district court concluded that Dr. Blinder "did not impress the court as a persuasive or convincing witness. What really stood out in his testimony is the glaring contradictions of his statements." (R.T. 294).
 
 
 39
 Our only concern on this claimed error is whether the court's findings are clearly erroneous. They may not be set aside "unless clearly erroneous, and due regard shall be given to the opportunity of the trial judge to judge of the credibility of the witnesses. . . . " (Fed.R.Civ.Proc. 52(a)).
 
 
 40
 The same standard applies with great force to the testimony of the lay witnesses. A Guamanian judge, being more attuned to local culture, customs and mores is best capable to pass upon the conduct, integrity and truthfulness of Guamanian witnesses. After carefully analyzing and reciting their testimony, the trial judge "was generally unimpressed with the testimony of plaintiff's non-expert witnesses." (C.T. 292).
 
 
 41
 With respect to the trial court's conclusions as to both lay and expert witnesses, we cannot say, after reading all the testimony, that we are left with the definite and firm conviction that a mistake has been committed. United States v. United States Gypsum Co., 333 U.S. 364, 395, 68 S.Ct. 525, 92 L.Ed. 746 (1948).
 
 
 42
 We therefore find no merit in plaintiff's first alleged error.
 
 III
 
 43
 Appellant's alleged third error the exclusions of testimony of intimate acquaintances as to plaintiff's mental condition relates to two witnesses.
 
 
 44
 Leon Guerrero saw plaintiff once in 1947 when he, as a medical intern, examined plaintiff's deceased brother who had committed suicide, and stated plaintiff was then hysterical. He saw her a second time two months later at the Guam Memorial Hospital Infirmary and described her as "withdrawn." Seven years later (about 1954), Guerrero saw plaintiff on several occasions at plaintiff's sister's "Club Harmony," and saw plaintiff twice in 1963, once for about an hour at one friend's house, and once at the home where she was living. He did not see her again until time of trial.
 
 
 45
 To the question "Could you tell us what your feeling was about (plaintiff's) mental condition back in 1963?", an objection was made, and the district court ruled "The objection will be sustained." No attempt was made to rephrase an awkward question. The witness was next asked (after he said he knew what a deed was):
 
 
 46
 "Q Do you know whether or not Josefina could understand what a deed is?
 
 
 47
 "Mr. Bordallo: Your Honor, I object, this goes to
 
 
 48
 "The Court: Objection sustained." (R.T. 139)
 
 
 49
 We are not informed what the basis for the objection was. But we need not speculate, for very clearly Guerrero did not qualify either as an expert medical witness, or as an intimate acquaintance. (People v. Levy, 71 Cal. 618, 12 P. 791).
 
 
 50
 "We are not unmindful of the rule that the question of whether one is an intimate acquaintance within the meaning of section 1870, subd. 10, of the Code of Civil Procedure, rests largely in the discretion of the trial judge, and his ruling will not be disturbed in the absence of an abuse of discretion. But the Legislature must have intended, when it authorized laymen to give their conclusions as to mental condition, and then qualified this permission by providing that only 'intimate' acquaintances should so testify, that the class who might thus testify should be considerably limited." The Atkins Corp. v. Tourny, 6 Cal.2d 206, at 210, 57 P.2d 480, at 482 (1936).
 
 
 51
 In a different category was the witness Adella Roberto. She is the daughter-in-law of plaintiff-appellant Josefina's sister, Concepcion Roberta Padula. More important, for nine years she saw plaintiff-appellant daily (R.T. 160-161). She qualified as an "intimate acquaintance." As appellees concede, the witness was therefor qualified to express an opinion as to plaintiff's " mental sanity of a person, the reason for the opinion being given." Guam Code of Civil Procedure, § 1870, subd. 10, and see Hughes v. Grandy, 78 Cal.App.2d 555, 567, 177 P.2d 939 (1947). Appellant cites the questions asked and the answers given by Adella Roberto in his brief as being from R.T., page 166, line 10 to page 167, line 10. From R.T., page 166, line 10 to page 167, line 2, no question as to the witness's opinion concerning the plaintiff's mental sanity was asked. The proper question was then asked.[7] No objection was made on any ground. The witness answered, "Yes." The witness was then asked a second proper question, "what is that opinion?". No objection was made on any ground. The answer, however, was not responsive. It could mean many things. It did not express any opinion as to sanity. The answer was:
 
 
 52
 "A. Oh, she is not so If she is going to sell the property, she is not supposed to."
 
 
 53
 The objection made, while not in classic form,[8] was apparently made to the answer, not to the question. The objection was sustained. No request to strike the answer was made. The court did not strike the answer. No effort was made by counsel for plaintiff Josefina thereafter to obtain a proper or responsive answer to his question. There is no question but that the witness, Adella Roberto "did not approve her (Josefina) for signing the several deeds." (R.T. 184).
 
 
 54
 In brief, no error in the admission of any evidence was shown. Appellant's counsel apparently decided, as trial strategy, that he would permit his expert testimony alone to carry his burden of proof as to insanity of the plaintiff-appellant in 1963. This proof, in the mind of the trier of fact was, as we have seen, insufficient, and, appellant failed to meet or carry her burden of proof.
 
 
 55
 In view of our conclusions, other subsidiary points raised need not be considered. The judgment of dismissal by the District Court is affirmed.
 
 
 
 [1]
 United States v. Johnson, 181 F.2d 577, 580 (9th Cir. 1950)
 
 
 [2]
 Tabor v. Ulloa, 323 F.2d 823 at 824, n. 5 (9th Cir. 1963)
 
 
 [3]
 Emphasis added
 
 
 [4]
 Plaintiff Josefina A. Roberto was originally joined in this action with her brother, Francisco A. Roberto, who had been adopted, and hence had no hereditary interest in the real property, under Guamanian law
 
 
 [5]
 "Appellant's trial counsel, Lawrence J. Teker, in his opening remarks to the court, stated: 'If it please the Court, we are representing Josefina Roberto and we are stating that she was incompetent in June of 1963 when she executed a Quitclaim Deed to Vicente Aguon.' (R.T. 8:8-11) Similarly, counsel admitted that his evidence sought to establish that the disputed deed was void under section 38, not merely voidable under section 39. 'Now, under sesction 38 of the Civil Code of Guam it reads that "a person entirely without understanding cannot contract." What it means, your Honor, is that any deed executed by a person entirely without understanding would be void and that is what we intend to prove in Court today.' (R.T. 9:7-12) Finally, Mr. Teker concluded his opening statement by asserting: 'And we will prove through the witnesses to the Court that Josefina was mentally incompetent to sign the deed back in 1963. Moreover, she was entirely without understanding in 1963 to comprehend the nature of the transaction.' (R.T. 10:18-22)
 ". . . Of significant importance was the question counsel ultimately posed to Dr. Martin Blinder, appellant's only expert witness: 'In your opinion, do you know whether or not Josefina would have had any understanding of signing a deed back in June of 1963?' (R.T. 39:4-6)." (Appellee's Brief at 41-42).
 
 
 [6]
 "The basic issue is whether the deed executed by the plaintiff as grantor on June 10, 1963, was void in that plaintiff on the date of execution was a person entirely without understanding and who has no power to make a contract." (C.T. 297)
 
 
 [7]
 "Do you have an opinion as to her mental sanity or mental insanity, at that time back in 1963, around Typhoon Olive?" (R.T. 167)
 
 
 [8]
 "Mr. Bramhall: Objection, Your Honor, it is going back to the same question of selling the property. The Court: Objection sustained." (R.T. 167)
 Counsel for appellant, in his brief, then omits the next two statements of counsel. They were:
 "Mr. Bramhall: Is the question the mental competency? Mr. Tecker (Counsel for plaintiff-appellant): 'She has answered. They may cross-examine.' " (Emphasis added) (R.T. 167).