38 F.3d 1218
 74 A.F.T.R.2d 94-6737
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
ESTATE OF Silvio RAVETTI, Deceased, Donna Irene Logan,
Executrix, Petitioner-Appellant,
v.
COMMISSIONER, INTERNAL REVENUE SERVICE, Respondent-Appellee.
 No. 93-70852.
 United States Court of Appeals, Ninth Circuit.
 Submitted Oct. 3, 1994.*
Decided Oct. 11, 1994.
 
 Before: GOODWIN, O'SCANNLAIN and KLEINNFELD, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 We affirm the Tax Court decision.
 
 
 3
 Ravetti challenges his waivers of the statute of limitations, on the basis of his claimed incompetency when he signed them. This contention fails because the burden of proof was on Ravetti to prove his incompetence, Roberto v. Aguon, 519 F.2d 754, 759 (9th Cir.1975), and we review the Tax Court's determination that he was not only for clear error. Independent Elec. Supply, Inc. v. Commissioner, 781 F.2d 724, 727 (9th Cir.1986). Ravetti's only evidence for his incompetence was Dr. Krause's report that when he diagnosed Ravetti in November-December 1980, Ravetti suffered from "presenile dementia, probably Alzheimer's disease, early." This evidence is especially weak because the medical history and discharge summary, which Dr. Krause referred to in his affidavit, were not attached. Dr. Krause though Ravetti was at an "early" stage of the disease, which cuts against the inference that he was already incompetent. Appointment of a conservator, apparently based on his incompetences, did not take place until five years later, in 1985. Combined, the evidence allows for a rational inference that Ravetti was incompetent shortly before and after his 1980 hospitalization. But it does not compel those inferences. Ravetti signed the waivers 11 months before and 8 months after the hospitalization. Given this slim evidentiary record, the Tax Court could reasonably refuse to draw the inference that Ravetti had proved it more likely than not that he was incompetent at the relevant times.
 
 
 4
 The Estate appeals disallowance of the deductions and credits arising out of the coal tax shelter, on the ground that the Commissioner did not prove that Ravetti's motivation was to avoid taxes rather than to invest in a genuine business. But Ravetti's motivation did not matter. The Estate and the Commissioner "agree[d] to and incorporate[d] as part of [their] stipulation, all findings of fact and legal opinions reached by the Tax Court in Hawley v. Commissioner, T.C.Memo 1988-77." (Stipulation of Facts p 12). In Hawley, the general partner was found to lack a profit motive. Id. The law before and after 1982 requires determining the profit motive of a partnership at the partnership level. Wolf v. Commissioner, 4 F.3d 709, 713 (9th Cir.1993). Since the shelter's general partner lacked a profit motive, Ravetti's deductions were properly disallowed.
 
 
 5
 The Estate argues that it should be allowed a theft deduction for the coal tax shelter, because the seller of the investment defrauded Ravetti. But he did not claim a theft deduction on his return, establish when he discovered that he had been defrauded, 26 U.S.C. Sec. 165(e), or establish how much money he had lost to the theft (a different calculation from the deductions and credits attributable to the investment). The theft deduction, if one were allowable under Nichols, would likely be for a smaller amount of money and a different year. It was Ravetti's burden to claim the deduction and, if it were challenged, to prove his entitlement to it. Boehm v. Commissioner, 326 U.S. 287, 294 (1945). He did not carry this burden of proof.
 
 
 6
 The Estate argues that the deductions based on the movie tax shelter were wrongly disallowed, because the movie appears to have been a bona fide attempt to make a profitable film. The Estate argues persuasively that the use of an established producer and big-name stars show that when the movie was made, it was not a sham created just to be a tax shelter. But Ravetti did not invest in the movie at that time. He invested later. The movie was made for $400,000 by Noble Productions, immediately sold for $113,000 by Noble to 21st Century Film Management Corporation, which then quickly sold the film to C & M's tax shelter promoter for $1.5 million. When C & M bought the movie, the price was $150,000 cash, a recourse note for another $150,000, and a non-recourse note for $1.2 million. This type of financing, when combined with a significantly inflated purchase price, is one of the hallmarks of a sham investment. Independent Elec. Supply, Inc. v. Commissioner, 781 F.2d 724, 727 (9th Cir.1986). Gross receipts from the film were $7,802. Ravetti invested in C & M, not in Noble Productions. Ravetti's estate therefore had the burden of proving that C & M's, not Noble Production's, investment in the film was not a sham. The figures, financing, and limited exhibition support the tax court's determination that the sole motivation of C & M's investment, although not Noble Production's, was to produce tax credits and deductions, not profits. That determination was not clearly erroneous.
 
 
 7
 AFFIRMED.
 
 
 
 *
 The panel unanimously finds this case suitable for decision without oral argument. Fed.R.App.P. 34(a); 9th Cir.R. 34-4
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3